Manice *v.* Millen.

---

## MANICE *vs.* MILLEN.

In the city of New York taxes are *due* and *payable* on the 15th of January, in each year, at which time a warrant for the collection of those remaining unpaid is issued and placed in the hands of the collector.

A right of entry on the part of a landlord, for a forfeiture, may be suspended without being waived.

The doctrine that the acceptance of rent after a forfeiture has occurred, is a waiver of the forfeiture, is one of intent; it being inferred from the payment and acceptance of rent, that both parties recognize the lease as still valid. But the contrary may be shown by express proof.

In 1852 M. leased certain premises in the city of New York to S., for ten years from the 1st of May, 1852, at a specified rent; with a proviso that if the rent should be in arrear, or if default should be made in any of the covenants in the lease, M. might re-enter. S. covenanted that he and his assigns would pay the rent, and such *taxes* as should be imposed or *grow due* or *payable* out of the premises. In an action by M. against an assignee of the lessee, to recover the possession because of the non-payment of the taxes for the years 1853 and 1854, it appeared that on the 15th of December, 1854, the plaintiff told the defendant that unless the taxes were paid he would eject him. The defendant promised to pay by the 1st of January, and the plaintiff gave him until that day to pay. On the 8th of February, 1855, the defendant paid, and the plaintiff accepted, the rent due on the 1st of that

month; leaving the taxes unpaid. *Held* that it was to be inferred from the circumstances, that both parties understood the right of forfeiture should not be *waived* but only *suspended* until notice to the contrary should be given; and that an action to enforce the forfeiture would not lie without proof of such notice having been given.

APPEAL by the defendant from a judgment entered at a special term, denying a motion for a new trial. The action was brought to recover the possession of demised premises, and the plaintiff recovered a verdict.

*Charles Tracy*, for the appellant.

*C. P. Kirkland*, for the respondent.

*By the Court*, MITCHELL, P. J. In 1852 the plaintiff, Manice, leased to one Stone two lots of land in the city of New York, for ten years from 1st of May, 1852, at a certain rent, payable quarterly; with the proviso that if the rent should be in arrear, or if default should be made in any of the covenants therein contained on the part of the lessee or his assigns to be performed, the lessor might re-enter. The lessee covenanted that he and his assigns would pay the rent, and would also pay and discharge all such taxes, (including the Croton water tax,) as during the said term thereby demised should be imposed, or grow due or payable out of the said premises. The lease was assigned to the defendant. This action was brought to recover possession of the lands, for non-payment of taxes. The complaint states that there are now due and payable and unpaid, all the taxes which were imposed on said premises for the years 1853 and 1854, and the estimated taxes for 1854, amounting to more than $125. The answer denies the forfeiture, (which is a conclusion of law,) but does not deny that the taxes were imposed and were due and unpaid; yet it alleges that no sufficient demand to pay the taxes had been made, on the defendant; and that after the *levying* of the taxes "the plaintiff, with full knowledge that all said taxes were due, payable and unpaid waived any supposed for-

Manice *v.* Millen.

feiture" by reason of said non-payment or any other cause. The evidence showed that the plaintiff, on the 15th of December, 1854, told the defendant that unless the taxes should be paid he would eject the defendant. The defendant replied that he would pay by the 1st of January, when he expected money from a mortgagor. The plaintiff told the defendant he might have until that day to pay. The defendant offered to prove that on the 8th of February, 1855, he paid the rent due on the 1st of that month, and that he had erected buildings required by the lease, and that they were of large value. The lease required the lessee to erect buildings to cost $400, and gave him leave to remove them three months before the expiration of the term.

In erecting the buildings the defendant did no more than he had covenanted to do. There was no offer to prove that these improvements were made after a cause of forfeiture had occurred, and that the plaintiff saw them in progress. These two acts would be a waiver of the forfeiture. It was strenuously argued that no time was precisely fixed, in the lease, for the payment of taxes, while the time of payment of rent was so fixed, and that in the city of New York there is no obligation to pay taxes, even for two years after they are imposed. The taxes, here, are confirmed in September for the current year, and interest is deducted to 1st December following, for all amounts paid before 1st of November of that year. On the 1st of December, one per cent is added to the tax ; on the 1st of January, two per cent ; and if the tax is not paid by the 15th of January, a warrant issues to the collector, to collect the same. When the lands are sold for non-payment of taxes, they may be redeemed at any time within two years. The answer admits that the taxes were due and unpaid, by not denying it, and by alleging a waiver after " the taxes were due, payable and unpaid." A defendant admitting one fact in an answer, although he accompanies it with another allegation which favors himself, is bound by his admission, and obliged to prove his new allegation. But there can be no

doubt that these taxes were due and payable on the 15th of January, when the warrant for their collection was placed in the collector's hands. Interest is allowed by way of discount for prepayment before November 1st, and charged for any delay beyond that month; not (as was argued) from a consent that in this city tax-payers may take their own times to pay if they pay interest in addition, but to induce an earlier and to compel a a prompt payment. The taxes are a charge on the lands from the time when they are confirmed; a wrong is done to the landlord if they are left unpaid so long that interest is added to the principal; and a still greater wrong if payment is delayed so long that the debt is put into the hands of an officer to collect, with interest and costs.

The question then arises, did the acceptance of rent on the 1st of February, 1855, amount to a waiver of forfeiture for non-payment of all taxes that should have been paid before that time.

The acceptance of rent is generally a waiver of a previous cause of forfeiture, if that cause were known to the landlord. But this rule does not apply to cases of "a continuing breach." (*Arch. Land. and Ten. pp.* 98, 101.) So where there was a covenant that rooms should not be used for certain purposes, and they were so used, and afterwards the landlord accepted rent, and the tenant continued, after that, to use them for the same forbidden purposes, ejectment could not be brought for the misuser prior to the payment of rent, but was sustained for the subsequent continuance of the same misuser. (*Doe ex dem. Ambler* v. *Woodbridge,* 9 *Barn. & Cress.* 376.) And where the lessee covenanted to insure, and *keep* insured, the buildings, and he neglected to insure and the landlord distrained for rent, and afterwards brought ejectment, it was held that he might recover; that the lease meant that the lessee should always keep the premises insured by some policy or another, and that it was broken if they were uninsured at any one time; that "there was a continuing breach of the covenant for any portion of time that the buildings remained

Manice *v.* Millen.

uninsured." (*Doe ex dem. Flower* v. *Peck*, 1 *Barn. & Ad.* 428.) Thus far, this last case seems in favor of the plaintiff. But the court add, *obiter*, that if the covenant had meant that the original lessee should insure, and that he and his assigns should keep that same policy always in force, the *assignee* of the lease would not have been guilty of any breach, if the lessee had never insured, as the policy which the assignee was to continue, never could have existed, and then the distress would have been a waiver of the breach by the lessee. It is uncertain whether in this *obiter* part of the opinion the court meant to say that if there was to be but one policy always kept on foot, acceptance of rent would have been a waiver of forfeiture, even if the lessee had been in possession; or that, as the covenant in that event could be satisfied only by the lessee himself effecting it, and not by his assignee doing it, the waiver of the forfeiture for the lessee's default which the assignee could not repair, exonerated the assignee from the effect of that forfeiture. The latter is equitable, and was probably intended.

Those cases may be said to decide only that there may be a forfeiture, notwithstanding the acceptance of rent, where a cause of forfeiture existed before the rent was paid, and the same cause was continued afterwards in such a manner that the continuance, of itself, made a new cause of action, to which alone the landlord need refer without proving the prior cause, and that here the landlord had but one cause—the non-payment of taxes which were due before the payment of the rent, and did not become due again. This may be so, but the acts of the parties operated to postpone this cause of action by their mutual consent. The plaintiff gave notice that he would eject unless the taxes should be paid; and then the defendant agreed that they should be paid by the 1st of January next. The forfeiture was not then enforced, but there was a further indulgence, not by agreement but by acquiescence. And, it may be inferred that both parties understood that this right should be suspended, not waived; and if suspended, that it

would be so until notice to the contrary should be given. In the faith of this, the defendant probably paid his rent and the plaintiff accepted it. The plaintiff never could have intended to abandon a right which he had so recently insisted on; nor could the defendant suppose it would be enforced without further notice. No such notice was proved. That the right of entry may be suspended without being waived, even if rent be accepted, see *Doe* v. *Brindley, 4 Barn. & Adol.* 84, and *Arch. Landlord and Tenant,* 101. The doctrine that the acceptance of rent is a waiver of a forfeiture, is one of intent; it being inferred from the payment and acceptance of rent that both parties recognized the lease as still valid; but the contrary may be shown by express proof.

There should be a new trial; costs to abide the event.

[NEW YORK GENERAL TERM, November 2, 1857. *Mitchell, Clerke* and *Peabody,* Justices.]