Matter of the Application of ARTHUR SCHOELKOPF et al., as Trustees, Etc., for the Removal of PETER C. CORNELL and one from certain premises.

(County Court of Erie County, April, 1907.)

Landlord and tenant: Termination of relation — Breach of covenant or condition — Use of premises — Waiver of forfeiture; Re-entry and recovery of possession by landlord — Holding over after expiration of term — Termination for breach of covenant.

Where the contracting parties provide that upon the violation of a covenant and notice to the tenant the term of a lease shall expire, summary proceedings will lie to remove such tenant holding over.

A provision that the tenant shall use the premises for a theatre and opera house of strictly the first class, for the production of standard modern plays, operas and attractions of the highest class, is not satisfied by the production of popular price (or second class) melodramas, vaudeville and burlesque though they

County Court, Erie County, April, 1907.          [Vol. 54.

may be the best of their kind and correctly designated first class melodrama, first class vaudeville and first class burlesque.

The acceptance of rent by the landlord, after notice to terminate the lease had been given, for periods prior to the expiration of the term, is not a waiver of the breach of the condition under which the landlord was proceeding to terminate the lease.

SUMMARY proceeding to remove lessees.

Romer & Harrington, for petitioners.

Love & Keating, for respondents.

TAYLOR, J.   This is a summary proceeding brought to remove the lessees of the Teck theatre in the city of Buffalo from premises in said city, on the ground that the said tenants are holding over after the expiration of the term fixed by their lease.   The petitioners base their claim to succeed upon certain provisions of said lease, which are as follows: " That, if the parties of the second part should use the said premises, or any part thereof, for any other purpose than a theatre and opera house of *strictly the first class,* for the production of *standard modern plays, operas and attractions of the highest class,* or should violate any other agreement or covenant contained in the lease, then in either case said parties of the first part to said lease should have the right at their election to terminate the said lease, on first giving to said parties of the second part thereto, thirty days' notice of such election, to be served personally or by posting a notice in some conspicuous place in or about the premises, *and that the term of said lease should thereupon cease at the expiration of said thirty days, in the same manner and to the same effect, as if that were the expiration of the original term of said lease.*

" It being expressly agreed as one of the principal considerations moving the parties of the first part to the making of this lease, that the said parties of the second part *will furnish and maintain said Teck Theatre in first class manner and style and will use and conduct it for the production in the best class of theatrical entertainments, and will make*

*and maintain said Teck Theatre the leading and best theatre
of Buffalo, for and during the entire term of this lease,
which said parties of the second part do hereby expressly
agree to do."* The petitioners, claiming that these covenants
had been violated, seasonably served upon the lessees a thirty
days' notice of election, informing them that the terms
covered by the lease would expire on December 17, 1906.
After the last-mentioned day, the lessees remaining in pos-
session, this proceeding was brought.

The covenants in said lease upon which the proceeding is
based are almost identical in terms with those passed upon
in Cottle v. Sullivan, 8 Misc. Rep. 184; and it seems to be
the settled law of this State that where the contracting
parties to a lease provide therein that, upon the violation
of certain covenants and notice thereof to the tenants the
term of the lease shall expire, summary proceedings will lie
to remove such tenants holding over. Miller v. Levi, 44
N. Y. 489; Cottle v. Sullivan, 8 Misc. Rep. 184; Manhat-
tan Life Ins. Co. v. Gosford, 3 id. 509; Ronginsky v. Grantz,
39 id. 347.

This proceeding has been tried out at length, and with
great care and skill, by the counsel on both sides. From
the evidence submitted, it appears that there are certain
classes of theatres and theatrical attractions in this country,
and that plays are divided into high (or first) class, popular
price (or second class) melodramas, vaudeville and bur-
lesque. It also appears that these different classes of plays
are handled by separate booking agencies, and that the char-
acterization and standing of theatres are largely measured
by the classes of plays generally produced therein. It fur-
ther appears from the evidence that, since the close of the
season of 1904–1905, and a large portion of the time prior
thereto, the said Teck theatre has been what is known as a
popular price house, presenting mainly popular price or
second-class plays. The lessees produced evidence tending
to indicate Bostock's animal show, Hap Ward in " Not Yet
But Soon," and like Teck attractions are first-class attrac-
tions, " of their kind," and also that there is such a thing
as first-class vaudeville, first-class melodrama, and first-class

3

burlesque. However, there is no testimony here which leads me to the conclusion that such productions are "Attractions of the *highest class*" in the sense contemplated by these covenants. It is a matter of genus rather than species.

The term " best and leading theatres " is found in the lease, and the respondents make the point that, given two theatres, both or all producing the highest class attractions, there can be no " best." That is perhaps logical; but, taken with all the rest of the covenants, the expression serves to make the intentions of the parties clear. While it is true that, if there were several leading theatres each presenting first-class attractions only, no one should strictly be called " best," still no court in such a proceeding as this would judicially determine any one to be inferior to the others.

The respondents claim that, by accepting rent after notice to vacate was given, the petitioners have waived their right to bring this proceeding. I cannot view the matter in this light. Under the authorities there is no forfeiture here. This lease contemplates that which the law terms a condi-tional limitation, not a condition. The petitioners, under their contract, feeling that said covenants had been broken, duly notified the lessees that, on December 17, 1906, the lease would expire; and there seems to be no good legal reason why they should not be entitled to collect their rents up to the expiration of the term. The respondents also claim that, since certain relatives of the Schoelkopf peti-tioners accepted passes to a box in said theatre after De-cember 17, 1906, the court should hold this to be a waiver. This box, as I read the evidence, was used by said relatives without the knowledge or consent of the trustees. It is settled law in this State that there can be no waiver, under any circumstances, without full knowledge of all rights and the facts. McAdam Landl. & Ten. 646. Even in a case of forfeiture (which this is not) an acceptance of rent which should be construed as a waiver is entirely a matter of in-tent. Manice v. Millen, 26 Barb. 41.

It appears to me that this acceptance of rent and per-mitting the lessees to continue, after knowledge in the peti-tioners of the inferior performances, do not conclude the

Misc.]        County Court, Erie County, April, 1907.

petitioners. Such leniency I can construe as nothing more than a mere favor.

The respondents also contend that the terms of the covenants in question are so general and would require the court to enter into so many fields of inquiry that a summary proceeding cannot be properly based thereon. With this contention I disagree. I have examined the authorities tending to bear upon the question, and I find that the principles laid down in them cannot be extended to the proceeding at bar.

It finally comes to this: What were the intentions of the parties, all people of high intelligence, in making a contract of importance respecting matters well understood in every particular by all of them? I cannot think otherwise than that the parties fully intended that the Teck should produce, all the time, with exceptions occasionally necessary, those attractions only which are considered by the profession and the public as of *the highest class,* instead of even the best inferior grade productions; to the end that the Teck should be and should be regarded as the leading theatre of this city, in the generally accepted sense. The covenant to make the Teck the " best and leading " theatre may to the average mind seem harsh and difficult of performance; but the parties entered into it advisedly, with full knowledge of its import, and they must abide by it. Further than this, it appears from letters written by the lessees to the trustees and by other testimony produced that the lessees themselves felt that they were not abiding by the terms of the lease. They write and state orally that they hope to do better if they are given a chance, and the like; and it is well settled that the construction put upon a contract by the parties shall have large force in determining what the intentions of the parties were.

The argument is also made that, granting that the attractions produced were second class, the petitioners have been getting their rent and therefore have not been injured. This contention is without merit. It is not in the mouth of this court to say that the petitioners did not insist on the covenant to the contrary before entering into the lease and

as a large reason for their so doing. Whether this was because of a desire that the leading theatre only of this city should be operated on their premises, or because of some other motive equally reasonable, is not for this court to determine.

A final order is granted, with costs to the petitioners, as provided in section 2250 of the Code of Civil Procedure.

Final order granted, with costs.

Matter of the Supplementary Proceedings, ALBERT F. SCHWARMECKE, Judgment Creditor, *v.* JOSEPH B. GLENNY, Judgment Debtor.

(Supreme Court, New York Special Term, April, 1907.)

Supplementary proceedings — Procedure in general — Successive proceedings; Termination of proceeding.

Under the present practice (Code Civ. Pro. § 2454), proceedings supplementary to an execution can only be discontinued or dismissed by an order; and, until the entry of such an order, the pendency of such proceedings is a valid objection to another order for the examination of the judgment debtor and the latter order must be vacated.

MOTION to vacate an order for the examination of a judgment debtor in supplementary proceedings.

Gilbert D. Steiner, for motion.

Lucius H. Walds, opposed.

GIEGERICH, J.   It is conceded by the attorney for the judgment creditor that no orders have been entered upon the decisions dismissing the two former orders for the judgment debtor's examination.   While the failure to enter such orders may not formerly have been a valid objection to the third order, which is now sought to be vacated on the