**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Lazaro ROMAN, Defendant–Appellant.**

No. 90–9084.

United States Court of Appeals, Eleventh Circuit.

April 30, 1993.

Hulane E. George, Milledgeville, GA (Court-appointed), for defendant-appellant.

Michael T. Solis, George F. Peterman, III, Asst. U.S. Attys., Macon, GA, Thomas M. Gannon, Joseph C. Wyderko, Appellate Section, Crim. Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before TJOFLAT, Chief Judge, FAY, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK and CARNES, Circuit Judges.

PER CURIAM:

In this case, we must decide whether U.S.S.G. § 4A1.2 gives sentencing courts the discretion to examine the constitutionality of earlier state convictions for the first time in calculating a defendant's criminal history. The answer is "no."

Appellant Lazaro Roman pled guilty to conspiring to possess cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). In Roman's presentence report (PSI), the probation officer gave Roman a criminal history score of 3, based on a 1987 Florida burglary conviction. See U.S.S.G. § 4A1.1(a). These three points increased the applicable guideline range. See id. at Ch. 5, Pt. A.

Roman's counsel objected that the 1987 Florida conviction should not have been counted because it was based on an unconstitutional guilty plea. The theory was that Roman's plea was not knowing and intelligent because he does not speak English and had no interpreter at the state plea hearing. But counsel failed to support these contentions with affidavits (even one from Roman) or transcripts, offering instead only a brief summary of the state proceedings. Similar in appearance to a clerk's docket entries, this summary seems to be a copy of four pages of the Circuit Court of Dade County, Florida records. It shows nothing about whether an interpreter was present or not.

The district court refused Roman's request to hold an evidentiary hearing on the validity of the state conviction.[1] The court explained it could not "start wiping convictions off of the record," but noted its decision might be different if it were dealing

---

1. The court granted Roman's other objection to the PSI, which was based on the amount of cocaine involved, and reduced Roman's offense level from 32 to 28.

with a conviction that was not "presumptively valid." R2–1. When pressed, defense counsel told the sentencing judge that the only evidence known to counsel that supported Roman's constitutional challenge to his Florida conviction was the summary of the state hearing.

On appeal, a panel of this court vacated Roman's sentence and remanded his case for resentencing, concluding that section 4A1.2 gave the district court discretion to review the earlier state conviction. *United States v. Roman*, No. 90–9084 (11th Cir. May 7, 1992). We vacated the panel opinion, 968 F.2d 11 (11th Cir.1992), and now affirm the district court.

## DISCUSSION

### I.

■ U.S.S.G. § 4A1.2 specifies what convictions count in a defendant's criminal history score. At the time of Roman's indictment, Application Note 6 to section 4A1.2 read in part: "Convictions which the defendant shows to have been constitutionally invalid may not be counted in the criminal history score." U.S.S.G. § 4A1.2, comment (n. 6) (Nov. 1989). Before Roman's sentencing, Note 6 was amended to read: "[S]entences resulting from convictions that a defendant shows to have been previously ruled constitutionally invalid are not to be counted." U.S.S.G. § 4A1.2, comment (n. 6) (Nov. 1991). The same amendments also added a "Background" Comment, which says, "[t]he Commission leaves for court determination the issue of whether a defendant may collaterally attack at sentencing a prior conviction." U.S.S.G. § 4A1.2, comment (backg'd.).

■ Roman argues that, under these amendments, sentencing courts retain discretion to consider collateral challenges to state convictions.[2] But, the amended text of Note 6 is plain: under section 4A1.2, district courts can only exclude convictions that have already been ruled invalid. Nothing in Note 6, much less the guidelines themselves, authorizes district courts to question state convictions for other reasons.

Before Note 6 was amended, courts generally interpreted section 4A1.2 to allow defendants to challenge state convictions for the first time at sentencing. *See, e.g., United States v. Brown*, 899 F.2d 677, 679 (7th Cir.1990); *United States v. Davenport*, 884 F.2d 121, 124 (4th Cir.1989); *United States v. Dickens*, 879 F.2d 410, 411–12 (8th Cir.1989). The 1990 amendments specifically deleted the language on which these courts relied, substituting a more restrictive reference to sentences *"previously* ruled invalid" (emphasis added). No language now in Note 6 authorizes collateral review.

The Background Comment does not change the Note's meaning, but recognizes that—apart from the sentencing guidelines—the Constitution bars federal courts from using certain kinds of convictions at sentencing. *See United States v. Tucker*, 404 U.S. 443, 449, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972); *Burgett v. Texas*, 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967). The Background Comment acknowledges that nothing said in the guidelines could remove a court's authority to consider collateral challenges in such cases. But the guidelines add no independent power for collateral review.

### II.

■ Roman next argues the Constitution required the district court to conduct a

**2.** The amendments became effective on November 1, 1990. Because Roman was sentenced after that date, we must consider them. *See* 18 U.S.C. § 3553(a)(5); *United States v. Canales*, 960 F.2d 1311, 1314 (5th Cir.1992) (amendments are procedural changes and do not raise Ex Post Facto concerns).

Other circuits have split on the meaning of these amendments. *Compare United States v. Hewitt*, 942 F.2d 1270, 1276 (8th Cir.1991) (amendments bar defendants from attacking state convictions for the first time at sentencing) *with United States v. Jakobetz*, 955 F.2d 786, 805 (2d Cir.1992) (courts retain discretion to allow collateral challenges), *cert. denied,* —— U.S. ——, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992); *Canales*, 960 F.2d at 1315 (same). In our panel's opinion, the panel relied on dicta contained in *United States v. Cornog*, 945 F.2d 1504 (11th Cir. 1991), to hold that collateral review remains discretionary under the amendments. *Roman*, slip op. at 2357.

hearing on his Florida conviction, even if the guidelines did not.[3] In general, collateral review of state convictions must be through habeas corpus proceedings. But the Supreme Court has held sentencing courts may not rely on prior convictions that are "presumptively void." *Burgett*, 389 U.S. at 115, 88 S.Ct. at 262 (examining an uncounseled state conviction); *see Tucker*, 404 U.S. at 449, 92 S.Ct. at 592 (same). So, when a defendant, facing sentencing, sufficiently asserts facts that show that an earlier conviction is "presumptively void," the Constitution requires the sentencing court to review this earlier conviction before taking it into account.[4]

■ We believe that the kinds of cases that can be included in the "presumptively void" category are small in number and are perhaps limited to uncounseled convictions. But we have no need to define today what kinds of convictions fall into this category. Defense counsel's proffer in this case was inadequate for a hearing.[5] Defense counsel conceded that Roman's constitutional claim was based on the state summary alone. And the summary—which did not affirmatively show the absence of an interpreter—was too indefinite to require the district court to act. Because the guide-

lines did not authorize the district court to examine the earlier state conviction, and defense counsel did not present enough to lay a factual foundation for collateral review on the grounds that the state conviction was "presumptively void," the sentence imposed by the district court is AFFIRMED.

TJOFLAT, Chief Judge, specially concurring:

The Sentencing Reform Act of 1984 (the Sentencing Act),[1] through the Guidelines,[2] directs district courts to consider an offender's criminal history when sentencing. In this case, the offender, Lazaro Roman, objected to the district court's consideration of his 1987 Florida burglary conviction on the ground that the conviction was obtained in violation of the United States Constitution. The district court declined Roman's invitation to review the constitutionality of the prior conviction. The question before us is whether the district court could entertain the objection, and, if so, whether it erred by not doing so.

The en banc court looks to two sources of authority to answer this question: the Sentencing Guidelines and Supreme Court precedent. I agree with the court that the

---

**3.** Roman also claims that, regardless of our decision on collateral review, we must remand for resentencing because the district court did not make a finding on acceptance of responsibility and did not follow the procedures set out in *United States v. Jones*, 899 F.2d 1097 (11th Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990). Roman raised neither of these issues before the panel or the district court; and he offers no compelling reason why we should consider them now.

**4.** *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), also cited by the parties, is different. There a state judge seemingly sentenced an uncounseled defendant on the basis of earlier convictions that, in fact, had not occurred. The Court reversed the conviction on due process grounds. *Id.* at 740–41, 68 S.Ct. at 1255.

**5.** The Chief Judge believes that, under both the Guidelines and cases such as *Tucker*, the only kinds of convictions that cannot be used at sentencing are those that suffer from a constitutional defect that undermines the presumption that the defendant in fact committed the underlying act. He also believes the phrase, "pre-

sumptively void," is inconsistent with his proposed standard and only goes to the burden of proof.

In his concurrence, the Chief Judge talks about questions not before us. What the Chief Judge mainly writes about is whether the category of constitutionally infirm convictions that cannot be used at sentencing extends beyond the kinds of convictions at issue in *Burgett* and *Tucker*. He stresses conduct as distinct from convictions. He also is trying to develop some kind of test or rule for application in a wide variety of future cases. But to decide the case before us, we do not have to decide these hard questions of constitutional law. We are restrained because, under every legal standard that has been proposed to us (including several different definitions of "presumptively void" that we have considered), counsel's proffer was factually too indefinite to trigger a hearing on the earlier conviction that is pertinent to the present case.

**1.** 18 U.S.C. §§ 3551–3586 (1988).

**2.** United States Sentencing Commission, *Guidelines Manual* (Nov. 1, 1990).

Guidelines do not provide district courts the authority in question.[3] I cannot, however, agree that Supreme Court precedent requires sentencing courts to entertain challenges to "presumptively void" prior convictions.[4] Nevertheless, because I agree with the court that Roman did not present sufficient evidence to support his objection, I join in the court's judgment affirming Roman's sentence.

My central disagreement with the court stems from its interpretation of *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967),[5] and *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). The court concludes that "the Supreme Court has held [that] sentencing courts may not rely on prior convictions that are 'presumptively void.'" *Ante*, at 1119. This conclusion ignores the differences between the Guidelines' sentencing model, and the sentencing models in *Burgett* and *Tucker*. Had the court focused on the goals of Guideline sentencing, it would have viewed *Burgett* and *Tucker* in a different light.

3. The court states that the Guidelines provide "no independent power" to engage in such determinations. *Ante* at ——. What the Guidelines might say on this subject, however, cannot control the procedures utilized by a trial court in fashioning a sentence. The Guidelines merely identify the facts relevant to an appropriate sentence. The Guidelines do not, and under the Act cannot, provide the process by which trial judges carry out the judicial task of determining these facts.

4. The Supreme Court has recently rejected this approach. *See Parke v. Raley*, —— U.S. ——, 113 S.Ct. 517, 524, 121 L.Ed.2d 391 (1992); *infra* note 24. Moreover, the court today implies that its standard has no precedential force. *See ante* note 5 ("under every legal standard that has been proposed to us (including several different definitions of 'presumptively void' that we have considered), counsel's proffer was factually too indefinite to trigger a hearing on the earlier conviction *that is pertinent to the present case*."). Nevertheless, a majority of the *en banc* court has clearly indicated the constitutional standard it believes district courts should apply when faced with collateral challenges to prior convictions. I feel compelled, therefore, to address directly the issues presented in this case.

5. I do not discuss *Burgett* because the sentencing model at issue there was immaterial to the

I.

A.

Before the introduction of the Sentencing Reform Act, the federal sentencing scheme employed a "medical" model, such as that found in *Tucker*. This model was premised on the belief that prisons could rehabilitate inmates, and that a parole board, acting as the "physician," could determine when an inmate had been "cured." Prison sentences were thus indeterminate in length, and periods of incarceration were imposed almost exclusively for the purpose of rehabilitation; punishment, general deterrence, and specific deterrence were incidental consequences of the scheme. Once the parole board believed that an inmate had been rehabilitated, the board could release the inmate on parole.

Under this model, the sentencing court conducted a non-adversarial sentencing hearing, and considered a virtually limitless scope of evidence. *United States v. Scroggins*, 880 F.2d 1204, 1212 (11th Cir.1989), *cert. denied*, 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990).[6] Because sentences were not reviewable,[7] a trial judge,

resolution of the question of whether the petitioner's conviction should have been set aside. In *Burgett*, the prosecution presented evidence of the petitioner's prior criminal convictions in order to trigger the application of the state's recidivism provisions. The trial court, however, instructed the jury to ignore this evidence and, therefore, not to address the recidivism issue. The Court reversed the conviction, as opposed to the resulting sentence, because of the prosecution's presentation to the jury of irrelevant, but presumptively prejudicial, evidence. *See Burgett*, 389 U.S. at 112–16, 88 S.Ct. at 269–72. *But see Parke v. Raley*, —— U.S. ——, 113 S.Ct. 517, 524, 121 L.Ed.2d 391 (1992) (reading *Burgett* as holding "that a prior conviction could not be used for sentence enhancement").

6. Typically, the prosecutor would play no role at the hearing; anything the prosecutor might want the court to know would be communicated to the court's probation office and included in the presentence report. In fashioning the offender's sentence, the court would consider that report, as corrected or augmented by the offender at the hearing, the offender's allocution, and anything his attorney might present on his behalf.

7. Illegal sentences were, of course, reviewable.

in fashioning a sentence, did not have to reveal how he used that evidence or indicate the penological goals to be served by the sentence.[8]

The medical model's philosophy that prisons could rehabilitate inmates gradually fell into disrepute, and, in 1984, Congress abandoned the model and replaced it with the Sentencing Reform Act's system requiring prison sentences to be determinant in length. Parole was abolished. Thus, such fixed terms of imprisonment were subject only to good-time credits. *Scroggins*, 880 F.2d at 1208 & n. 9.

Departing from the medical model, the Sentencing Act focused the court's inquiry on the purposes of sentencing. Specifically, the Act required that sentences be fashioned

. (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medi-

cal care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2); *see Mistretta v. United States*, 488 U.S. 361, 367, 109 S.Ct. 647, 652, 102 L.Ed.2d 714 (1989). Congress thus identified the four penological goals for sentencing: punishment, general deterrence, specific deterrence, and rehabilitation.[9]

To aid a court in fashioning a sentence, the Act created the Sentencing Commission and directed it to promulgate guidelines indicating, for a given offense and offender, which of these goals are to be achieved. *See* 28 U.S.C. § 994.[10] The resulting Sentencing Guidelines circumscribe the sentencing court's discretion and provide a structure for meaningful appellate review.

The court "begins the guideline sentencing process by determining the circumstances of the defendant's offense conduct, the defendant's criminal history, and any other facts deemed relevant by the guidelines." *Scroggins*, 880 F.2d at 1209 (footnotes omitted). It does so, however, only after reviewing a detailed presentence report (PSR) prepared by a probation officer,[11] and after entertaining the parties'

---

**8.** On occasion, however, such as in *Tucker*, 404 U.S. at 444 n. 1, 92 S.Ct. at 590 n. 1, a trial judge might point to the evidence he thought important and indicate the reasons for the sentence.

**9.** For purposes of determining the need for incarceration, Congress specified that only the first three goals, punishment, general deterrence, and specific deterrence, could be considered. *Scroggins*, 880 F.2d at 1208. Congress prohibited incarcerating an offender for purposes of rehabilitation, the fourth sentencing goal. *See United States v. Dunnigan*, — U.S. —, —, 113 S.Ct. 1111, 1118, 122 L.Ed.2d 445 (1993) (citing 28 U.S.C. § 994(k)). Rehabilitation, however, still plays a role in the Guidelines' determinative sentencing process.

> [P]risons will continue to offer rehabilitative programs for incarcerated offenders, who will hopefully take advantage of them. Moreover, the Sentencing Reform Act permits the sentencing judge to consider an offender's need for rehabilitation in prescribing the conditions of probation or supervised release.

*Scroggins*, 880 F.2d at 1208 n. 10 (citing 18 U.S.C.A. § 3563(b) (West 1985 & Supp.1989)); *see also United States v. Mogel*, 956 F.2d 1555, 1559 (11th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 167, 121 L.Ed.2d 115 (1992); 18 U.S.C. § 3562(a).

**10.** The Guidelines employ two values, an Offense Level and a Criminal History Score, to quantify the relevant offense-based and offender-based characteristics. The Offense Level "evaluate[s] the seriousness of the offense," and "ensure[s] that the offender will receive a just punishment for his crime and that the offender's punishment will adequately deter others from committing his crime." *Scroggins*, 880 F.2d at 1208. The Offense Level thus addresses Congress' goals of punishment and general deterrence. The Criminal History Score acts as the factual predicate for determining an offender's "likelihood of recidivism and future criminal behavior," U.S.S.G. Ch. 4, Pt. A intro. comment., thus serving Congress' goal of specific deterrence.

**11.** Under the Guidelines, the presentence report serves purposes similar to a pre-trial stipulation in a civil case. The report identifies what the probation officer believes are the Guidelines' provisions applicable to the offender's case and the relevant offense-based and offender-based characteristics; the report also identifies the legal (or guideline) and factual issues remaining to be litigated. The district court, however, is not bound by the report.

objections to that report. At the sentencing hearing, the government has the burden of demonstrating what constitutes an appropriate sentence under the Guidelines.

### B.

In this case, the district court was called upon to focus on the third purpose of sentencing—specific deterrence. The Sentencing Commission has concluded that the offender's "criminal history" is a good indicator of his or her likelihood of recidivism. *United States v. Mogel,* 956 F.2d 1555, 1560 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 167, 121 L.Ed.2d 115 (1992).[12] Two classes of evidence are relevant: prior criminal conduct and prior convictions. *See* U.S.S.G. §§ 4A1.1–4A1.3.[13] Convictions are relevant because, and to the extent

that, they reflect the existence of underlying criminal conduct.

When the government presents evidence of a prior conviction, the burden shifts to the offender to show that it overstates his likelihood of recidivism. U.S.S.G. § 4A1.3. The Guidelines preclude consideration of prior convictions that the offender "shows to have been previously ruled constitutionally invalid." U.S.S.G. § 4A1.2 comment. (n. 6). In such cases, the government may attempt to establish the offender's likelihood of recidivism through evidence of the conduct underlying the conviction. *Id.*

Under the Guidelines, the "prior conviction" label acts as a proxy for evidence of the *conduct* that gave rise to the conviction.[14] A prior conviction is "counted" in

**12.** Congress initially identified eleven offender-based characteristics:

(1) age;
(2) education;
(3) vocational skills;
(4) mental and emotional condition to the extent that such condition mitigates the defendant's culpability or to the extent that such condition is otherwise plainly relevant;
(5) physical condition, including drug dependence;
(6) previous employment record;
(7) family ties and responsibilities;
(8) community ties;
(9) role in the offense;
(10) criminal history; and
(11) degree of dependence upon criminal activity for a livelihood.

28 U.S.C. § 994(d). As the *Mogel* court observed, however, "[w]hile the Guidelines ... identify a wide variety of circumstances affecting the offense-based component of a sentence, the offender-based component almost entirely relies on the offender's criminal history." 956 F.2d at 1560 (citing U.S.S.G. Ch. 4, Pt. A).

**13.** The Guidelines' treatment of the conduct underlying reversed and overruled convictions, as well as unindicted conduct, confirms its emphasis on prior criminal conduct for determining an offender's likelihood for recidivism. Even if a prior conviction has been held unconstitutional or reversed on other grounds, the Guidelines still provide for consideration of the conduct underlying that conviction. U.S.S.G. § 4A1.3.

*See United States v. Schweihs,* 971 F.2d 1302, 1319 (7th Cir.1992) ("although one element of the charged offense was not proved," the sentencing court could consider conduct underlying reversed conviction). Likewise, " 'an acquit-

tal does not bar a sentencing court from considering the acquitted conduct in imposing sentence'...." *United States v. Lynch,* 934 F.2d 1226, 1234 n. 8 (11th Cir.1991) (quoting *United States v. Rivera–Lopez,* 928 F.2d 372, 373 (11th Cir.1991) (per curiam)), *cert. denied,* —— U.S. ——, 112 S.Ct. 885, 116 L.Ed.2d 788 (1992); *see also United States v. Johnson,* 934 F.2d 1237, 1239 (11th Cir.1991) (permitting consideration of prior conduct not leading to a conviction); *cf. United States v. Thomas,* 932 F.2d 1085, 1089 (5th Cir.1991) (holding that courts may consider conduct outside the count of conviction), *cert. denied,* —— U.S. ——, 112 S.Ct. 264, 116 L.Ed.2d 217 (1991), and *cert. denied,* —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 447 (1991), and *cert. denied,* —— U.S. ——, 112 S.Ct. 887, 116 L.Ed.2d 791 (1992); *United States v. Keys,* 899 F.2d 983, 989 (10th Cir.) (holding that prison disciplinary record can be used for upward departure), *cert. denied,* 498 U.S. 858, 111 S.Ct. 160, 112 L.Ed.2d 125 (1990); *United States v. Funt,* 896 F.2d 1288, 1300 (11th Cir.1990) ("[A] sentence may be imposed based on a wide range of considerations, including, for example, conduct for which the defendant has not been indicted." (citing *Williams v. New York,* 337 U.S. 241, 242, 69 S.Ct. 1079, 1081, 93 L.Ed. 1337 (1949), and *Houle v. United States,* 493 F.2d 915, 915 (5th Cir.1974))).

**14.** The Sentencing Commission did not make normative judgments concerning the likelihood of recidivism indicated by the conduct underlying prior convictions. Instead, the Commission has assigned all prior convictions an average likelihood of recidivism. The government and the offender may seek a departure from this norm by presenting evidence that the conviction presents a greater or lesser likelihood of recidivism than this norm. *See* U.S.S.G. § 4A1.3; 18

an offender's Criminal History Score only because it raises a *presumption* of criminal conduct that may inform the court's determination of the offender's likelihood of recidivism.

## C.

Consider a hypothetical sentencing hearing. The government presents evidence of the offender's prior criminal conduct and convictions to show the need for specific deterrence. When the government presents evidence of a prior conviction, the government seeks to invoke the presumption that the offender engaged in the underlying conduct. The offender, however, may challenge the conviction so that the government must present independent evidence of

the conduct. Because the issue under the Guidelines is whether the offender engaged in past criminal conduct and, thus, is likely to recidivate,[15] such a challenge is relevant only if the offender did not engage in the underlying conduct. Therefore, to raise an objection to the invocation of the presumption, the offender must deny that the conduct occurred.[16]

The offender's challenge, here a constitutional challenge, must also attack the reliability of the presumption—not just the fact of conviction—as an indicator of prior criminal conduct. Otherwise, the government could respond by arguing that even if the conviction were constitutionally invalid, the court should nevertheless invoke the presumption.[17] Under the Guidelines, the sen-

U.S.C.A. § 3553(b) (West Supp.1992) (departure considered when the offender shows an "aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described"); *United States v. Johnson,* 934 F.2d 1237, 1239 (11th Cir.1991) (explaining procedure to be employed for departures from Criminal History Scores); *see also* U.S.S.G. § 4A1.1, comment. (backg'd) ("[i]n recognition of the imperfection of [measuring criminal history by the sentence,] however, § 4A1.3 permits information about the significance or similarity of past conduct underlying prior convictions to be used as a basis for imposing a sentence outside the applicable guideline range."). Thus, a sentencing court may *depart* upward or downward from an offender's Criminal History Score, based on reliable evidence concerning the offender's prior criminal conduct, in order to refine its determination of the offender's likelihood of recidivism.

**15.** Because the court can ratchet up the offender's Offense Level for obstructing justice, *see* U.S.S.G. § 3C1.1, an offender would not deny the conduct if the government can prove, by a preponderance of the evidence (not beyond a reasonable doubt), *see United States v. Ignancio Munio,* 909 F.2d 436, 439 (11th Cir.1990) (per curiam), that the offender had engaged in the criminal conduct underlying the conviction. Moreover, an offender need not object to a conviction's validity if the offender simply wants to demonstrate that the conviction overstates his likelihood of recidivism. *See* U.S.S.G. § 4A1.3; *supra* note 13.

**16.** A close analogy to this requirement that an offender must deny the conduct is found in "actual innocence" habeas cases. *See, e.g., Sawyer v. Whitley,* — U.S. ——, ——, 112 S.Ct.

2514, 2519, 120 L.Ed.2d 269 (1992) ("the 'narrow exception' for miscarriage of justice was of no avail to the petitioner because the constitutional violation, if it occurred, 'resulted in the admission at trial of truthful inculpatory evidence which *did not affect the reliability of the guilt determination.*'" (quoting *McCleskey v. Zant,* — U.S. ——, ——, 111 S.Ct. 1454, 1457, 113 L.Ed.2d 517 (1991)) (emphasis added)); *Kuhlmann v. Wilson,* 477 U.S. 436, 455 n. 17, 106 S.Ct. 2616, 2627 n. 17, 91 L.Ed.2d 364 (1986) ("[T]he prisoner must 'show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt.'" (quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U.Chi.L.Rev. 142, 160 (1970)).

**17.** Should the offender demonstrate that the presumption should not be invoked, the prior conviction would not be "counted" for purposes of U.S.S.G. § 4A1.1. The government may, of course, still provide evidence, including reliable evidence presented in the prior criminal proceedings, demonstrating that underlying conduct did occur. *See United States v. Simmons,* 924 F.2d 187, 192 n. 5 (11th Cir.1991); *see also* U.S.S.G. § 6A1.3(a) ("In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."); U.S.S.G. § 4A1.3 (requiring reliable information to depart from criminal history category); *supra* note 13.

tencing court must therefore entertain the offender's objection if (1) the offender denies the conduct, and (2) the objection undermines the presumption associated with the conviction.[18] As I conclude in Part II, under the Supreme Court's decision in *Tucker*, sentencing courts must review such challenges.[19]

**18.** If the offender has previously brought his challenge on direct appeal or through a traditional collateral proceeding (and perhaps also in a prior federal sentencing hearing), a judgment adverse to the offender in such a proceeding would preclude relitigation of that issue during sentencing. *Cf. Harbuck v. Marsh Block & Co.,* 896 F.2d 1327, 1329 (11th Cir.1990) (holding that issues fully and fairly litigated in state court must be accorded Full Faith and Credit).

Moreover, as a practical matter, if the sentencing court can find that the prior criminal conduct did occur, it can depart upward under U.S.S.G. §§ 4A1.2 n. 6 and 4A1.3, and need not engage in a protracted debate over the validity of the conviction itself. *See United States v. Cash,* 983 F.2d 558 (4th Cir.1992).

**19.** In this case, the Government has argued that it is both fair and correct for the district court to employ the presumption. Moreover, the Government has asserted that offenders already have a fair opportunity to challenge a prior conviction's validity through direct appeals and traditional forms of collateral attack. (If the offender's objection had sufficient merit, it is probable that the offender would have challenged the conviction when the proper parties were present and the facts were still fresh.) The conviction, therefore, should stand as a final judgment that the offender engaged in the criminal conduct represented by the conviction: to question the validity of this judgment would require the district court to ignore the weight of that judgment, thus undermining the principle of finality and, for state convictions, undermining important principles of comity and federalism.

Because *Tucker* requires sentencing courts to entertain an offender's objection to the consideration of a prior conviction, when properly raised, I need not address the Government's arguments, strong though they may be. Recently, in *Parke v. Raley,* —— U.S. ——, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), the Supreme Court addressed the procedures underlying a Kentucky recidivist statute. Kentucky's procedures permitted an offender to challenge the validity of a prior conviction, and placed the burden of proof on the offender. The court found that because the offender had never appealed his

## II.

### A.

The court reads *Tucker* as holding that the Constitution requires district courts to entertain challenges to "presumptively void" prior convictions when considering an offender's criminal history. The court's "presumptively void" standard, however, does not address the role the Guidelines assign to prior convictions, and, as a result, provides a rule that is inconsistent with the Act's sentencing goals.[20]

prior convictions, they had become "final years ago." In this context, the court held that the "presumption of regularity" must attach

> to final judgments, even when the question is waiver of constitutional rights. Although we are perhaps most familiar with this principle in habeas corpus actions, it has long been applied equally to other forms of collateral attack. . . . Respondent, by definition, collaterally attacked his previous convictions; he sought to deprive them of their normal force and effect in a proceeding that had an independent purpose other than to overturn the prior judgments.

*Id.* at ——, 113 S.Ct. at 523 (citations omitted). Thus, while the Court expressly refused to address the issue we face today, the Court recognized the applicability of its habeas jurisprudence to collateral challenges at sentencing. I believe that if the Court were faced with the issue in this case, it would find that principles of comity (which cannot be overridden unless the state procedures fail to protect individual rights) and of federalism require sentencing courts to honor state criminal judgments. *See Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct 2514, 120 L.Ed.2d 269 (1992); *United States v. Jones,* 907 F.2d 456, 482 (4th Cir.1990) (*Jones I*) (Wilkinson, J., concurring in part and dissenting in part) (citing *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), and *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 84, 104 S.Ct. 892, 898, 79 L.Ed.2d 56 (1984)), *cert. denied,* 498 U.S. 1029, 111 S.Ct. 683, 112 L.Ed.2d 675 (1991).

**20.** The tone of the court's holding suggests that presumptively void convictions cannot be used for any purpose. Because of the context of the question presented, however, I interpret the court as simply holding that a presumptively void conviction cannot be "counted" in the offender's Criminal History Score. Moreover, the court's "presumptively void" standard is both underinclusive and overinclusive. The standard is underinclusive because it does not permit an objection which requires detailed factual inquiries (such as a *Gideon* claim that cannot be proven from a facial examination of the record—i.e., that is not "presumptively void") even though the objection may be consistent with the

*Tucker* involved a collateral challenge under 28 U.S.C. § 2255 to a sentence based, at least in part, on prior uncounseled convictions obtained in violation of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Because the sentencing court was not required to articulate the basis for its sentence, the Supreme Court could not know whether the sentencing court had considered evidence of the underlying conduct or simply the fact of conviction. All the Court knew was that the district court "gave specific consideration to the respondent's previous convictions before imposing sentence upon him" and that "two of those convictions were wholly unconstitutional under *Gideon*." *Tucker*, 404 U.S. at 447, 92 S.Ct. at 592. The Court concluded that to assume "that the prosecutions would have turned out exactly the same even if the respondent had had the assistance of counsel, *would be to reject the reasoning* upon which the *Gideon* decision was based." *Id.* at 447 n. 5, 92 S.Ct. at 592 n. 5 (emphasis added);[21] *cf. Burgett*, 389 U.S. at 115, 88 S.Ct. at 262 (citation omitted) ("[t]o permit a conviction obtained in violation of [*Gideon*] to be used against a person either to support guilt or enhance punishment for another offense is to erode the principle of that case" (citation omitted)). Because the sentencing court may have inappropriately taken into account Tucker's prior convictions, the Court reversed the sentence.

*Tucker*'s language, when viewed with the sentencing court's emphasis on the prior convictions, demonstrates that although the Court did not identify reliability as a relevant factor, it imported *Gideon*'s reasoning concerning the unreliability of uncounseled convictions. In *Gideon*, Justice

Black noted that "reason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." 372 U.S. at 344, 83 S.Ct. at 796. Justice Black noted:

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible....

*Id.* at 345–46, 83 S.Ct. at 797 (quoting *Powell v. Alabama*, 287 U.S. 45, 68–69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932)). *Tucker*, applying *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), simply extended *Gideon's* emphasis on reliable determinations of guilt to the sentencing context. *Tucker*, 404 U.S. at 447, 92 S.Ct. at 592 (citations omitted); *see Townsend*, 334 U.S. at 740, 68 S.Ct. at 1255 (precluding the imposition of sentences "predicated on misinformation").

Justice Marshall's concurrence in *Baldasar v. Illinois*, 446 U.S. 222, 224, 100 S.Ct. 1585, 1586, 64 L.Ed.2d 169 (1980) (per curiam), further reflects the importation of *Gideon's* principles of reliability into the

---

Guidelines and, as discussed *infra*, advance *Tucker's* constitutional mandate. The court's standard is overinclusive because it requires sentencing courts to exclude consideration of "presumptively void" prior convictions even if the alleged constitutional infirmity does not undermine the reliability of the conviction as an indicator of prior·criminal conduct.

**21.** The Court did not find that the sentencing court would have imposed a different sentence had the convictions not been entered. The Court observed, however, that

if the trial judge ... had been aware of the constitutional infirmity of two of the [offender's] previous convictions, the factual circumstances of the respondent's background would have appeared in a dramatically different light at the sentencing proceeding. Instead of confronting a defendant who had been legally convicted of three previous felonies, the judge would then have been dealing with a man who, beginning at age 17, had been unconstitutionally imprisoned for more than ten years....

*Tucker*, 404 U.S. at 448, 92 S.Ct. at 592.

sentencing context.[22] In *Baldasar*, a plurality held that *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), and *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), prohibited the use of an uncounseled misdemeanor conviction to trigger an Illinois enhancement statute. The "[d]efense counsel [had] argued ... that because [the defendant] had not been represented by a lawyer at the first proceeding, the conviction was too unreliable to support enhancement of the second misdemeanor." *Baldasar*, 446 U.S. at 223, 100 S.Ct. at 1585–86. In his concurrence, Justice Marshall explained why reliability must be the relevant factor when deciding whether to preclude sentencing courts from using "tainted" prior convictions to enhance sentences.

> We should not lose sight of the underlying rationale of *Argersinger*, that unless an accused has "the guiding hand of counsel at every step in the proceedings against him," his conviction is not sufficiently reliable to support the severe sanction of imprisonment.

*Id.* at 227–28, 100 S.Ct. at 1588 (citations omitted) (Marshall, J., concurring). Justice Powell, in dissent, attacked this assertion by arguing that because most misdemeanor cases are not complex, uncounseled misdemeanor convictions are not inherently unreliable. *Id.* at 233 n. 2, 100 S.Ct. at 1591 n. 2 (Powell, J., dissenting).[23] Justice Powell also argued that the offender's "uncounseled conviction [was] conceded to be valid and thus must be presumed reliable." *Id.* In rebuttal, Justice Marshall noted that in *Argersinger*,

> the Court emphasized the need for the assistance of counsel to assure reliability of misdemeanor convictions: "We are by no means convinced that legal and constitutional questions involved in a case that actually leads to imprisonment even for a brief period are any less complex than when a person can be sent off for six months or more."

*Id.* at 227 n. 2, 100 S.Ct. at 1588 n. 2 (Marshall, J., concurring) (quoting *Argersinger*, 407 U.S. at 33, 92 S.Ct. at 2010); *see also id.* at 47, 92 S.Ct. at 2017–18 (Powell, J., concurring).

The Court's reasoning in *Tucker* did not rely upon the "presumptively void" character of the offender's prior conviction. *Tucker* simply held that pre-*Gideon* uncounseled convictions could not be considered reliable for sentencing purposes.[24]

---

**22.** *Baldasar* was a per curiam opinion adopting the reasoning of Justices Marshall's, Stewart's, and Blackmun's concurring opinions. Only two other Justices joined Justice Marshall's opinion. Some circuits have found that the divergent concurrences in this case did not result in a rule-of-law. *See, e.g., United States v. Eckford*, 910 F.2d 216, 219 (5th Cir.1990); *Schindler v. Clerk of Circuit Court*, 715 F.2d 341, 345 (7th Cir.1983), *cert. denied*, 465 U.S. 1068, 104 S.Ct. 1419, 79 L.Ed.2d 745 (1984); *United States v. Robles–Sandoval*, 637 F.2d 692, 693 n. 1 (9th Cir.), *cert. denied*, 451 U.S. 941, 101 S.Ct. 2025, 68 L.Ed.2d 330 (1981); *cf. Black v. Florida*, 935 F.2d 206, 207 (11th Cir.1991) ("*Baldasar* 'forbid[s] only the sentencing of a defendant to an increased term of incarceration solely upon consideration of a prior conviction obtained in a proceeding for which, due to the indigence of the defendant or some misconduct of the State, counsel was unavailable to the defendant.'" (quoting *Moore v. Jarvis*, 885 F.2d 1565, 1573 (11th Cir.1989))).

**23.** This argument resembles the "special circumstances" approach for providing counsel in state criminal proceedings which the Court developed after *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252,

86 L.Ed. 1595 (1942), and which it specifically overruled in *Gideon*.

**24.** After *Parke*, it is evident that the presumptively void nature of the convictions in *Burgett* (and, therefore also in *Tucker*) affected the burden of proof for, but not the constitutional dimensions of, the offender's claim:

> [The *Burgett*] Court held that *a prior conviction could not be used for sentence enhancement* because the record of the earlier proceeding did not show that the defendant had waived his right to counsel. Respondent suggests that because *Burgett* involved a state recidivism proceeding, it stands for the proposition that every previous conviction used to enhance punishment is "presumptively void" if waiver of a claimed constitutional right does not appear from the face of the record. We do not read the decision so broadly. At the time the prior conviction at issue in *Burgett* was entered, state criminal defendants' federal constitutional right to counsel had not yet been recognized, and so it was reasonable to *presume* that the defendant had not waived a right he did not possess....
> —— U.S. at ——, 113 S.Ct. at 524 (emphasis added); *cf. id.* at ——, 113 S.Ct. at 525 (relying

Yet, for our purposes *Tucker's* holding is still significant; by importing the reasoning of *Gideon, Tucker* precludes courts from considering unreliable evidence when fashioning sentences. *See Lewis v. United States,* 445 U.S. 55, 67, 100 S.Ct. 915, 922, 63 L.Ed.2d 198 (1980) (*Burgett* and *Tucker* "found that the subsequent conviction or sentence violated the Sixth Amendment because it depended upon the reliability of a past uncounseled conviction.").

Because the medical and Guideline models utilize prior convictions for different purposes, not all objections that were relevant under the medical model will be so under the Guidelines. Under the medical model, an objection to the consideration of a prior conviction prevailed if the label "conviction" was shown to be unreliable.[25] Under the Guidelines, however, the relevant inquiry is the offender's prior criminal conduct. An objection to the consideration of a prior conviction must undermine the reliability of the conviction as an indicator of prior criminal conduct, not the reliability of the conviction. Thus, under the Guide-

lines' model, objections that do not question the occurrence of the prior conduct, even if they would undermine the reliability of the conviction, are irrelevant. *See, e.g., United States v. Lynch,* 934 F.2d 1226, 1235 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 885, 116 L.Ed.2d 788 (1992).[26]

### B.

Roman argues that, under *Burgett* and *Tucker,* "our general principle of a government of laws [and] Congress' mandate to the Commission" preclude counting of "constitutionally tainted" convictions in an offender's Criminal History Score. He makes this claim irrespective of whether the alleged constitutional infirmity—here an unconstitutional guilty plea—if proven, would undermine the goals of sentencing as prescribed by Congress and the Sentencing Commission.

Because offenders may vindicate their constitutional rights through direct and collateral challenges, I do not believe that

on the historical practice in some state courts which "altogether prohibited defendants in recidivism proceedings from challenging prior convictions as erroneous, as opposed to void for lack of jurisdiction.").

**25.** In line with *Tucker, Gideon* claims satisfy this standard. Because *Tucker* involved pre-*Gideon* prior convictions, simply providing documentary evidence that the offender did not have the benefit of counsel establishes the unreliability of his prior conviction. *See Parke,* —— U.S. at ——, 113 S.Ct. at 524. Yet, in the medical model at issue in *Tucker,* whenever an offender's *Gideon* challenge to a prior conviction could be established—whether or not the prior conviction is "presumptively void"—but the sentencing court refused to entertain that challenge, the court would have fashioned a sentence based on unreliable evidence of prior conduct, thus undermining the constitutional right to counsel recognized in *Gideon, cf. Burgett,* 389 U.S. at 115, 88 S.Ct. at 262, and, more importantly, denying an offender his due process right to be sentenced based on reliable evidence, *see Townsend,* 334 U.S. at 740–41, 68 S.Ct. at 1255 (due process requires that sentence be based only on accurate information); *United States v. Lynch,* 934 F.2d 1226, 1235 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 885, 116 L.Ed.2d 788 (1992).

**26.** The claim presented in *Lynch* illustrates a constitutional objection which can be ignored

for purposes of sentencing. The panel considered whether the exclusionary rule applies to sentencing proceedings:

> Evidence obtained as the result of an unconstitutional search is not inherently unreliable; rather ... it is excluded at trial in order to deter police from making illegal searches. Nor is such evidence necessarily irrelevant in sentencing. Thus, excluding all illegally seized evidence would frustrate the federal policy, codified, in part, in the Act and the Sentencing Guidelines, that judges consider all relevant and reliable facts in order to assure that each defendant receives an individualized sentence.

*Id.* at 1236 (footnote omitted). Thus, permitting an offender to challenge the use of admittedly reliable (though unconstitutionally obtained) evidence directly conflicts with federal sentencing policies. *Id.* at 1236 (sentencing courts are "limited only by the requirement that the information that the court considers be reliable").

The exclusionary rule might, however, "apply in sentencing proceedings [where the] evidence [was] unconstitutionally seized solely to enhance the defendant's sentence." *Id.* at 1237 n. 15; *see also United States v. Jessup,* 966 F.2d 1354 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1398, 122 L.Ed.2d 772 (1993); *cf. United States v. Gilmer,* 811 F.Supp. 578 (D.Colo. 1993) (egregious circumstances prohibited use of evidence at sentencing).

sentencing hearings are the proper forum for the wholesale vindication of constitutional rights infringed in an earlier criminal proceeding.[27]  The focus of sentencing hearings must be to determine, based on reliable evidence, an appropriate and individualized sentence.

### III.

Roman presented an ambiguous state court record as the sole evidence that he did not knowingly enter a guilty plea.  He did not deny that he engaged in the conduct represented by the conviction.  Moreover, he presented no other evidence:  he offered no corroborating testimony, and did not even proffer his own testimony as to the relevant events.[28]  The district court, had it held a hearing, could not have determined that the conviction was improperly considered by the court when fashioning his sentence.

Under the Guidelines and a proper interpretation of *Tucker*, a sentencing court must consider a constitutional challenge to a prior conviction only if (1) the offender denies the occurrence of the underlying criminal conduct, and (2) the constitutional infirmity undermines the reliability of the conviction.  In this case, Roman's objection to his prior burglary conviction failed on both counts.

I therefore concur in the judgment of the court.

---

**27.** *Lynch* provides an illustration of a constitutional challenge to a prior conviction that would be irrelevant for sentencing purposes.  *See supra* note 26.

**28.** This may be because the PSR notes that "Roman was represented by counsel at the time of the plea and [he] argue[d] that he was made fully aware of the implications of the felony conviction."  Here, it seems unlikely that Roman could prevail in his challenge.  Moreover, had he proffered testimony to the contrary, and had it been shown to be clearly false, Roman's sentence might have been increased by the sentencing court for obstructing justice.  *See* U.S.S.G. § 3C1.1 (2 level increase for obstruction of justice); *United States v. Dedeker*, 961 F.2d 164 (11th Cir.1992).