[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-16310
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 7, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00315-CR-11-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL ANTHONY DAVIS,
a.k.a. Mike,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(June 7, 2010)

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Michael Anthony Davis appeals his 140-month sentence imposed for conspiring to possess with intent to distribute, and to distribute, a quantity of cocaine base and a quantity of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Davis argues that: (1) the district court clearly erred by increasing his criminal history score based on a 91-day prison term that he served upon the revocation of his probation for a prior conviction of driving with a suspended license, and that his due process rights were violated at this probation revocation hearing; and (2) the district court clearly erred when calculating the drug quantity attributable to him and his base offense level, based on the incredible testimony of the government's witness, Telly Petty.  After careful review, we affirm.

"We accept the district court's factual findings at sentencing unless clearly erroneous," and review the district court's application of the Sentencing Guidelines to the facts de novo.  United States v. Caraballo, 595 F.3d 1214, 1230 (11th Cir. 2010).  The district court's determination of drug quantity is a finding of fact that we review for clear error.  United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005).  "When a defendant objects to a factual finding that is used in calculating his guideline sentence, such as drug amount, the government bears the burden of establishing the disputed fact by a preponderance of the evidence."  Id.

2

First, we reject Davis' claim that the district court clearly erred by increasing his criminal history score. Section 4A1.2(c) provides that all felonies and misdemeanors, unless excluded under subsections (c)(1) or (c)(2), are counted as part of a defendant's criminal history. U.S.S.G. § 4A1.2(c). Subsection (c)(1) excludes a number of misdemeanor offenses, including driving with a suspended license, unless "the sentence [imposed] was a term of probation of more than one year or a term of imprisonment of at least thirty days." Id. § 4A1.2(c)(1). When a defendant is sentenced to probation, but that probation is subsequently revoked, § 4A1.2(k) instructs the court to "add the original term of imprisonment to any term of imprisonment imposed upon revocation" when calculating criminal history points under § 4A1.1(a), (b), or (c), as applicable. Id. § 4A1.2(k). Section 4A1.1(b) provides that 2 points are to be added for each prior sentence of imprisonment of at least 60 days. Id. § 4A1.1(b).

With respect to the instant sentencing proceeding, the Sentencing Guidelines "do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law (e.g., 21 U.S.C. § 851 expressly provides that a defendant may collaterally attack certain prior convictions)." Id. § 4A1.2, comment. (n.6). Under § 851, a person, who claims that a prior conviction, alleged in an information filed by the government as a basis for a

3

sentencing enhancement, was obtained in violation of the Constitution, may challenge that conviction and has the burden of proof by a preponderance of the evidence on any issue of fact raised in that response. 21 U.S.C. § 851(a), (c).

We have held that "[c]ollateral attacks on prior convictions are allowed in federal sentencing proceedings in one narrow circumstance only: when the conviction was obtained in violation of the defendant's right to counsel." United States v. Phillips, 120 F.3d 227, 231 (11th Cir. 1997) (citing United States v. Roman, 989 F.2d 1117, 1120 (11th Cir. 1993) (en banc) (holding that unless a prior conviction is "presumptively void," it is not open to collateral attack in a federal sentencing proceeding)). In sentencing a defendant, the district court cannot ignore or discount a prior conviction that has not been invalidated in a prior proceeding unless there was an unwaived absence of counsel in the proceedings that resulted in the prior conviction. Id. (citing U.S.S.G. § 4A1.2, comment. (n.6)).

Here, Davis has not previously challenged the constitutionality of his probation revocation pursuant to the procedures set forth in § 851. Moreover, Davis does not argue on appeal that he was either improperly denied: (1) notice of the probation revocation proceeding; or (2) the right to counsel at his probation revocation hearing. Instead, Davis' argument focuses on the following facts: (1) the transcript of the revocation hearing does not show that he was present in court; and (2) the evidence

4

presented at that hearing was insufficient to support the revocation of his probation. Neither of these claims entitles Davis to collateral review by this Court of the constitutionality of the probation revocation hearing. See id.; U.S.S.G. § 4A1.2, comment. (n.6). Accordingly, because Davis fails to argue that he was unconstitutionally denied the right to counsel at the probation revocation hearing, or that his probation revocation previously was held unconstitutional in a proceeding conducted pursuant to § 851, the district court did not err by adding 2 criminal history points for his 91 days' imprisonment served upon revocation of his probation for his conviction for driving with a suspended license.

Next, we find no merit in Davis' claim that the district court clearly erred in relying on the incredible testimony of the government's witness, Petty, in determining the drug quantity attributable to Davis and his base offense level. Sentencing may be based on fair, accurate, and conservative estimates of the drug quantity attributable to a defendant. United States v. Zapata, 139 F.3d 1355, 1358 (11th Cir. 1998). However, sentencing cannot be based on calculations of drug quantities that are merely speculative. Id.; see also United States v. Brazel, 102 F.3d 1120, 1160-61 (11th Cir. 1997) (stating that the government's extrapolation from the evidence to increase the drug quantity was impermissibly based on speculations that two isolated deliveries were representative of weekly deliveries during the conspiracy period).

5

Calculation of a defendant's base offense level for a drug conspiracy under U.S.S.G. § 2D1.1 "requires a determination of the quantity of illegal drugs properly attributable to a defendant. This, in turn, requires an assessment of the conduct of others for which a defendant is accountable under section 1B1.3." United States v. Reese, 67 F.3d 902, 905 (11th Cir. 1995) (quotation omitted). "For sentencing purposes a member of a drug conspiracy is liable for his own acts and the acts of others in furtherance of the activity that the defendant agreed to undertake and that are reasonably foreseeable in connection with that activity." United States v. Ismond, 993 F.2d 1498, 1499 (11th Cir. 1993) (citing U.S.S.G. § 1B1.3(a)(1)). Even if the district court does not make individualized findings, a defendant's sentence may be upheld if the record supports the amount of drugs attributed to the defendant. See id.

Section 1B1.3(a)(1) of the Guidelines provides that, to determine the base level for a charged offense, the district court shall consider:

> all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity. . . .

U.S.S.G. § 1B1.3(a)(1)(A)-(B). "We afford substantial deference to the factfinder, in this case, the district court, in reaching credibility determinations with respect to

6

witness testimony." United States v. Pham, 463 F.3d 1239, 1244 (11th Cir. 2006) (quotation omitted). "Where the factfinding resolves a swearing match of witnesses, the resolution will almost never be clear error." Rodriguez, 398 F.3d at 1296.

Under the Sentencing Guidelines, a defendant receives a base offense level of 32 when he is accountable for at least 5 kilograms, but less than 15 kilograms, of cocaine hydrochloride. U.S.S.G. § 2D1.1(c)(4). Application Note 12 to § 2D1.1 provides that "[t]ypes and quantities of drugs not specified in the count of conviction may be considered in determining the offense level." Id. § 2D1.1, comment. (n.12). In determining the appropriate offense level, Note 12 instructs the district court to approximate the quantity of the controlled substance when "there is no drug seizure or the amount seized does not reflect the scale of the offense," based, in part, on the agreed-upon quantity of the substance to be sold. Id.

Here, the evidence established by a preponderance that Davis was responsible for at least five kilograms of cocaine. At the sentencing hearing, Petty testified as to several specific instances in which he sold Davis at least eight kilograms of cocaine: (1) Petty recalled selling Davis one-quarter kilogram of cocaine on two separate occasions at Davis' girlfriend's house in June and July of 2008, and Davis admitted to these purchases; (2) during that same time frame, Petty also recalled selling Davis one-half kilogram of cocaine on two occasions, and one kilogram of cocaine on

another occasion, and Davis admitted to purchasing one-half kilogram of cocaine in a Kroger grocery parking lot in July 2008; (3) Petty agreed to sell one kilogram out of a three-kilogram shipment to Davis and a codefendant, and after this shipment was seized, Davis gave him money in advance to purchase two kilograms of cocaine; and (4) Petty recalled one more transaction in which Davis bought two kilograms of cocaine at the codefendant's house. Davis also admitted to purchasing four and one-half ounces of cocaine from Petty on two separate occasions. Thus, the record reflects that Davis purchased or conspired to purchase well over five kilograms of cocaine. See Ismond, 993 F.2d at 1499.

The district court heard Petty's testimony on direct examination that he had an incentive to testify in the hopes of a more lenient sentence, and Petty admitted to his prior criminal history. Moreover, the district court heard Petty's responses on cross-examination as to inconsistencies between his direct examination testimony and his statements to DEA agents after his arrest regarding: (1) whom he bought cocaine from; and (2) whether Davis ever gave him money in advance to buy cocaine. The district court considered: (1) the agent's testimony on cross-examination that Petty's testimony "seemed pretty accurate" compared to his prior statements; and (2) Davis' counsel's inquiry as to the discrepancies regarding Petty's testimony as to who supplied the cocaine. The district court also heard Davis' testimony regarding the

8

drug quantity with which he was involved, and the court was within its purview as the fact finder to conclude that Petty's testimony was more credible than Davis' testimony. See Rodriguez, 398 F.3d at 1296.

We owe substantial deference to the district court's finding that Petty's and the agent's testimony was more credible than Davis' statement as to the drug quantity with which Davis was involved. See Pham, 463 F.3d at 1244; Rodriguez, 398 F.3d at 1296. Giving substantial deference to the district court's attribution of at least five kilograms of cocaine to Davis, the record supports this finding by a preponderance of the evidence, and accordingly, the court did not clearly err in assigning to him a base offense level of 32, pursuant to § 2D1.1(c)(4). See Pham, 463 F.3d at 1244; Ismond, 993 F.2d at 1499.

**AFFIRMED.**