**UNITED STATES of America, Appellant,**

**v.**

**Edward GILBERT.**

**No. 93–7416.**

United States Court of Appeals,
Third Circuit.

Argued Feb. 3, 1994.

Decided March 29, 1994.

David M. Barasch, U.S. Atty., Malachy E. Mannion, Lorna N. Graham, Asst. U.S. Attys., Scranton, PA, Theodore B. Smith, III (argued), Asst. U.S. Atty., Harrisburg, PA, for appellant.

Gerard E. Grealish, (argued), Scranton, PA, for appellee.

Before: GREENBERG, ROTH, Circuit Judges, and POLLAK, District Judge.[1]

_____

**1.** Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

ROTH, Circuit Judge:

In this appeal the government contends that the district court erred in failing to sentence the defendant, Edward Gilbert, pursuant to the penalty provisions of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). This statute provides that a person who violates 18 U.S.C. § 922(g) and who has three prior convictions for violent felonies shall be sentenced to not less than 15 years of imprisonment. Section 922(g) makes it unlawful for a person who has been convicted of a crime punishable by imprisonment for a term exceeding one year to possess a firearm.

On November 24, 1992, Gilbert was convicted by a jury of possession of a firearm in violation of § 922(g). The government moved to sentence Gilbert under § 924(e), based on his record of seven prior violent felony convictions. Gilbert objected to the application of § 924(e), in part on his assertion that five of these prior convictions were the product of involuntary and unknowing guilty pleas. At the sentencing hearing, counsel who had represented Gilbert at the time of these five convictions testified that it had been customary during 1972 for the state trial judge to forgo plea colloquies in cases such as Gilbert's. The district court then held that the five convictions in question were "constitutionally invalid" and could not be counted toward the imposition of the statutory minimum sentence.

We will vacate the sentence imposed by the district court because we conclude that the court failed to provide a sufficient basis for its decision that the five prior convictions were invalid. Nowhere in the transcript of the sentencing proceeding or in the sentencing report did the court specify the standard of proof the parties were required to meet, nor did the court make sufficient findings for this Court to review its decision. We will therefore remand this case to the district court in order that it may state the basis for its decision in accordance with the standards we set out herein.

## I.

In September 1991 the Pennsylvania State Police received a report that Edward Gilbert, a convicted felon, had been shooting firearms on his property in rural Towanda, Pennsylvania. Apparently Gilbert's neighbors, Dr. and Mrs. Theodore Them, had recorded numerous incidents of Gilbert firing a semi-automatic rifle and a handgun. The Thems complained that Gilbert had threatened to kill them and that on one occasion Gilbert had ridden his lawn tractor with a loaded revolver in his hand shooting in the air in the direction of the Thems' house. On October 28, 1991, special agents of the Bureau of Alcohol, Tobacco, and Firearms obtained a warrant and made a search of Gilbert's residence. Following this search, Gilbert was arrested and indicted for violation of 18 U.S.C. § 922(g).[2] Specifically, the indictment charged that Gilbert possessed two rifles, one shotgun, and one revolver.

Gilbert pled not guilty. After an eight-day trial, the jury found Gilbert guilty of possessing the firearms in violation of § 922(g). Prior to the conclusion of the trial, the government filed a notice with the court stating its intention to seek the mandatory minimum sentence of 15 years' imprisonment under 18 U.S.C. § 924(e), based on Gilbert's record of prior convictions.[3] The government notice

2.  18 U.S.C. § 922(g)(1) provides in part that: It shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

3.  18 U.S.C. § 924(e)(1) provides in part that: In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

included a list of Gilbert's seven prior violent felony convictions which had occurred between 1972 and 1987.

Gilbert contested five of these convictions, dated March 13, 1972, and entered in the Bradford County, Pennsylvania, Court of Common Pleas.[4] The five convictions stemmed from guilty pleas entered into by Gilbert for burglaries committed during a three-month period between December 17, 1971, and February 29, 1972. For each of the five incidents, Gilbert was charged with unlawfully entering a dwelling with the intent to commit a felony.[5] On March 13, 1972, Gilbert pled guilty to each of these five offenses. Although he never appealed the convictions for these crimes, Gilbert sought to suppress them in the federal sentencing proceeding which is the focal point of this appeal.

Any three of the seven convictions contained in the government's notice would suffice to qualify Gilbert for an enhanced sentence under § 924(e). However, if the five contested convictions were considered invalid, the remaining two would not meet the minimum necessary to qualify Gilbert for the enhanced penalty.

On May 14, 1993, the district court held a sentencing hearing, at which time it heard testimony and considered arguments to determine whether Gilbert should receive the minimum sentence of 15 years' imprisonment required under § 924(e).[6] The government submitted into evidence certified copies of Gilbert's 1972 convictions. For each conviction, the certified copy contained the state's charges, along with a form on the reverse side indicating Gilbert's decision to plead guilty.[7] The form indicated that Gilbert was advised of the offense charged and of his rights, although there is no evidence of the specific rights Gilbert was informed of or of the rights he waived. In addition, the government and the defendant disagree on the

---

**4.** Two later convictions were dated 1981 and 1987. At the sentencing hearing on the present offense, Gilbert did not contest the constitutional validity of the 1987 conviction. He did contest the validity of the 1981 conviction based on his contention that the indictment was brought in violation of the Pennsylvania Constitution. The district court denied this claim and Gilbert does not challenge that ruling.

**5.** The offenses included: (1) December 17, 1971 burglary and larceny of property totalling $7.00; (2) December 24, 1971 burglary and larceny of property totalling $100.00; (3) February 26, 1972 burglary and larceny of eight "old" silver dollars, three new silver dollars, and four packs of cigarettes; (4) February 29, 1972 burglary and larceny of wallet including $18.00 and credit cards; and (5) February 29, 1972 burglary and larceny of $6.50 and a check written to the occupant's relative for $54.94.

**6.** At the start of the sentencing hearing, the district court recognized that under *United States v. Brown*, 991 F.2d 1162 (3d Cir.1993), it must first decide whether to exercise its discretion to consider Gilbert's collateral challenge to the constitutionality of his prior state convictions. In *Brown*, we stated our agreement with the procedures and factors established by the Fourth Circuit for district courts to use in deciding whether to consider collateral challenges. 991 F.2d at 1167 (citing *United States v. Jones*, 977 F.2d 105, 110–11 (4th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1335, 122 L.Ed.2d 719 (1993)). Despite the district court's recognition of *Brown*, the record indicates that the court neglected to note its evaluation of the factors listed in that case. Our review of those factors as applied to this case indicates that the district court did not abuse its discretion in entertaining Gilbert's collateral challenge. Nevertheless, the better practice is for the district court to set forth its evaluation of a defendant's proffer before proceeding with a hearing on the merits of the defendant's collateral challenge.

**7.** The reverse side of the state indictment form stated:

I, <u>Edward Gene Gilbert</u>, Defendant, having been advised of the offense charged in the bill of indictment and of my rights, hereby (~~in open court~~) waive action by the grand jury and consent to proceed on the within bill of indictment presented by the attorney for the Commonwealth.

Dated: <u>March 13, 1972</u>
<u>Edward Gene Gilbert</u>
(Defendant)
<u>Leonard J. Frawley, Jr.</u>
(Attorney for Defendant)

I, <u>Edward Gene Gilbert</u>, Defendant named in the within bill of indictment hereby enter a plea of <u>guilty</u>.

Dated: <u>March 13, 1973</u>
<u>Edward Gene Gilbert</u>
(Defendant)
<u>Leonard J. Frawley, Jr.</u>
(Attorney for Defendant)

All the underlined words were handwritten by Gilbert, except for Mr. Frawley's signature. The phrase "in open court" had a line drawn through it.

significance which should attach to the fact that the pre-printed words "in open court" were apparently crossed out at the time Gilbert waived action by the grand jury and consented to proceed on the bill of indictment presented by the state's attorney.

At the May 14, 1993 federal sentencing hearing on the present offense, the government asserted that the certified copies of these convictions contained Gilbert's acknowledgement that he was informed of his rights and that he waived such rights. These certified copies were the only evidence presented to the district court by the government in support of its argument that these were valid convictions which must be used to enhance Gilbert's sentence under § 924(e). Neither party submitted a transcript of the March 13, 1972 proceeding at which the Bradford County Court of Common Pleas accepted Gilbert's guilty plea. Nor would either party provide a transcript of Gilbert's state sentencing hearing on May 8, 1972.[8]

At the federal sentencing hearing, Gilbert's principal witness was Leonard Frawley, his defense counsel at the time of the 1972 pleas. Frawley, the public defender at the time, testified that he did not specifically remember Gilbert's case, nor did he review any documents relating to the case prior to his testimony. With regard to whether a plea colloquy was held in open court, Frawley testified that:

> It was my experience that unless someone were going to receive a sentence which would result in the person's incarceration at a state correctional institution, there was no [plea] colloquy.... If there's a real chance here that the conviction will be appealed, then there was a colloquy. If it appeared that there would not be an appeal, then there was not a colloquy, and if a person was not sentenced to a state correctional institution, then obviously they got a suspended sentence, probation, or a county jail sentence. In any of these three cases, appeals just did not follow.

In response to a question of who would have provided the advice that is acknowl-

edged in the first section on the back of the indictment, Frawley testified: "Once again, I don't recall the specific case, but if he didn't go to a state correctional institution, I don't believe he would have been advised of his rights by the judge. If there would have been advice, it would have been by the defense attorney." He also testified that after being elected district attorney in 1980, following eight years of being the county's public defender, he changed the court's policy and required colloquies in all cases.

On cross-examination by the government. Frawley testified that, although he did not as a routine advise defendants of all of their rights, the defendants would be aware from their conversations that they had the right to plead not guilty and to go to trial. He also testified that the defendants would generally understand the charges against them and, if they were offered a plea agreement, the likely sentence which would be imposed. In addition, he testified that in all cases there "would be a presentation of the guilty plea to the judge." However, Frawley's testimony on whether the judge actually asked the defendant about his plea or just accepted the written plea is ambiguous.

The only other witness to testify about the 1972 pleas was a current judge of the Bradford County Court of Common Pleas, Jeffrey Smith. Judge Smith related that he was contacted by Gilbert's counsel in the present dispute in an effort to retrieve any tapes or transcripts of the defendant's 1972 plea or sentencing hearings. Judge Smith was unable to locate any tapes, stenographer notes, or transcripts from the proceedings.

At the conclusion of the federal sentencing hearing the district court stated that:

> With respect to the defense objections, which are numerous, the heart of which go, however, to the convictions for a felony in 1972 where we had, I believe, five counts of burglary, this court will sustain the objections of the defense as to those convictions for the purpose of enhancement in the prosecution before this court.

8. As a result of the five convictions, Gilbert received a suspended sentence and 15 months' probation conditioned on a $250.00 fine, the costs of prosecution, and restoration of any stolen property.

Other than this statement, the court stated no other findings of law or fact regarding its consideration of the prior state convictions.[9] In the Sentencing Report, the court noted:

> The court adopts the factual findings and guideline application in the presentence report except ... the Court, after having conducted a hearing, finds that the convictions listed at paragraph 31 of the Presentence Report are constitutionally invalid. Thus the sentence enhancement provisions of 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4(b)(3)(B) are not applicable.[10]

The court, finding that five of Gilbert's prior convictions were "constitutionally invalid," rejected the government's assertion that Gilbert should receive the minimum sentence of 15 years' imprisonment. Instead, the court sentenced Gilbert to 21 months' imprisonment and three years' supervised release.[11] The government filed a timely notice of appeal.

## II.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b). The district court based its decision not to impose the minimum 15 years imprisonment on a finding that five of Gilbert's state court convictions were "constitutionally invalid." The parties disagree on two fundamental points. The first issue of contention is which party has the burden of proof in demonstrating whether the prior convictions can be used to enhance Gilbert's sentence. The second issue is, having determined the burden of proof required, was that burden met.

The question of which party bears the burden of proof is a matter of law and therefore subject to plenary review. The question of whether a particular party has met its burden of proof necessarily involves the district court's application of the evidence to the legal standards which have been established. In this respect, we review the district court's decision for abuse of discretion.

## III.

In reviewing the government's appeal, the first question we must address is whether the defendant has the burden of demonstrating that the prior state convictions are invalid for purposes of imposing sentence under § 924(e) or whether the prosecution has the burden of demonstrating that the prior convictions are valid.

As a preliminary matter, we reject the government's assertion that it was improper to allow Gilbert to collaterally attack his prior state convictions at the sentencing stage of this federal proceeding. The government advanced the argument that the district court should only consider a collateral attack on prior convictions when the defendant alleges a "fundamental error" of the magnitude of denial of the right to counsel. In support of this assertion, the government directed our attention to *United States v. Roman*, 989 F.2d 1117 (11th Cir.1993) (en banc) and *United States v. Custis*, 988 F.2d 1355 (4th Cir.), *cert. granted*, —— U.S. ——, 114 S.Ct. 299, 126 L.Ed.2d 248 (1993).[12]

---

9. At one point in the government's closing argument, the court interrupted to explain the importance of a plea colloquy. The court stated: "The gift [gist] of a constitutional plea comes from the colloquy that the court has, and that the court satisfies itself that it's voluntary and intelligent, despite the plea offered by the defendant, and that comes from the defendant's demeanor, the manner in which he answers questions, the impression the judge gets. That is, I think, the heart of an appropriate plea."

10. U.S.S.G. § 4B1.4 sets forth the offense levels for armed career criminals who are subject to enhanced sentences under the provisions of 18 U.S.C. § 924(e).

11. This sentence was in accordance with the Sentencing Guidelines given the court's determination that five of Gilbert's prior convictions

could not be used to enhance his sentence under § 924(e) or the Guidelines.

12. The Supreme Court has granted certiorari in *Custis* on the question: "May defendant challenge, in federal sentencing proceeding, constitutional validity of prior conviction offered by government for sentencing enhancement under the Armed Career Criminal Act?" In *Custis*, the court of appeals upheld the district court's decision not to consider the defendant's constitutional challenge to his prior conviction. In the dispute here, the district court considered the defendant's constitutional challenge and agreed with the defendant that the prior conviction should not be counted under § 924(e)(1).

In *Roman,* the court of appeals held that under the Sentencing Guidelines the district court should not have examined the constitutionality of earlier state convictions for the first time in calculating a defendant's criminal history. The court determined that only when a defendant asserts facts that show an earlier conviction is "presumptively void" does the Constitution require the district court to review the earlier conviction before taking it into consideration. 989 F.2d at 1120. Roman's assertion, however, that his plea was not knowing and voluntary did not rise to a level of fundamental constitutional error. In *Custis,* the court of appeals held that, in considering a sentence enhancement under § 924(e), "district courts are obliged to hear constitutional challenges to predicate state convictions in federal sentencing proceedings only when prejudice can be presumed from the alleged constitutional violation ... and when the right asserted is so fundamental that its violation would undercut confidence in the defendant's guilt." 988 F.2d at 1362. As in *Roman,* the court in *Custis* held that the defendant's assertion that his state conviction was obtained without a knowing plea of guilt did not rise to this level of fundamental constitutional error.

The question for us, however, is not whether a district court is required to consider collateral attacks which are based on fundamental errors such as a denial of counsel but whether district courts have the discretionary authority, in other cases of collateral attack on a conviction, to do so. In *Custis,* the court acknowledged that under the Sentencing Guidelines, "courts [of appeal] have reached conflicting results" on the propriety of entertaining constitutional challenges to predicate offenses. 988 F.2d at 1361–62 n. 2.

■ In two recent decisions, we have reviewed district court decisions involving collateral attacks on prior convictions in federal sentencing proceedings. In each instant, the dispute did not involve a fundamental error tantamount to a denial of counsel. In neither case did we reject the district court's authority to review collateral attacks on state convictions. *See United States v. Stewart,* 977 F.2d 81 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1433, 122 L.Ed.2d 800 (1993) (reviewing district court decision not to enhance the defendant's sentence under § 924(e)); *United States v. Brown,* 991 F.2d 1162 (3d Cir.1993) (holding that district court had the authority, discretionary in nature, to consider collateral challenges to the constitutionality of prior state convictions which the government intended to use to enhance the defendant's penalty under the federal sentencing Guidelines). Given these precedents, we reject the government's assertion that it was improper to allow Gilbert to collaterally attack his prior state convictions.

### A. Who Has The Burden of Proof

Gilbert asserts that under the Supreme Court's holding in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the burden is on the government to demonstrate that the pleas were voluntary and knowing. In *Boykin,* the Supreme Court held, in a case involving a direct appeal, that it was error for the trial judge to accept a defendant's guilty plea without creating a record affirmatively showing that the plea was voluntary and intelligent. The Court held that, due to the significant constitutional rights a defendant waives in entering a guilty plea, the Court could not presume from a silent record that the defendant's plea was voluntary and intelligent. Since *Boykin,* courts have generally engaged in a colloquy with the defendant at the time of a guilty plea in order to insure a voluntary and knowing waiver of the defendant's constitutional rights. Based on *Boykin,* Gilbert asserts that, in the absence of a plea colloquy, the government has the burden of demonstrating that the pleas were constitutionally valid.

However, there is a fundamental distinction between the procedural posture of the constitutional attack in *Boykin* and Gilbert's assertion in the present dispute. *Boykin* involved a direct appeal of a state conviction. The present dispute involves a collateral attack on state convictions in the context of a federal sentencing proceeding.

The procedural posture in the present dispute is exactly the same as the procedural posture in *United States v. Stewart.* In *Stewart,* the government sought to enhance the defendant's sentence under § 924(e) and

the defendant asserted that one of his prior convictions should not be counted because it was constitutionally invalid under *Boykin.*

In *Stewart,* we reviewed the district court's determination that one of the defendant's prior state convictions was constitutionally invalid. Stewart had persuaded the district court that his guilty plea in the earlier state case was flawed because it was neither intelligent nor voluntary. Accordingly, the district court held that this prior conviction should not be used to enhance Stewart's sentence under § 924(e).

■ On appeal, we held that the burden was on the defendant to demonstrate that his earlier state conviction was not constitutionally valid. In doing so, we agreed with other courts of appeal which "have placed the burden on the party seeking to impugn the validity of the record—a variation on the presumption of regularity which attaches to official records." *Stewart,* 977 F.2d at 84. *See United States v. Ruo,* 943 F.2d 1274, 1276 (11th Cir.1991) ("To avoid sentence enhancement under § 924(e), the burden is properly placed on the defendant raising the challenge to show the constitutional invalidity of the prior conviction."); *United States v. Ferguson,* 935 F.2d 862, 866–67 (7th Cir. 1991) ("Contrary to the [defendant's] assertion, once the government has shown that a defendant has three prior violent felony convictions pursuant to § 924(e)(1), 'the burden rests with the defendant to show that the conviction was unconstitutional.'" (citation omitted)). Consequently, we held that in such collateral attacks: "a defendant has the burden of persuasion to establish that a plea was neither intelligent nor voluntary." *Id.* at 85. We reversed the district court because we found that the defendant had failed to met his burden of persuasion that the plea was neither intelligent nor voluntary.

This Court's analysis is buttressed by the Supreme Court's recent decision in *Parke v. Raley,* — U.S. —, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). In *Parke,* the Court considered a collateral attack on prior state convictions in the context of a state sentencing hearing in which the prosecution sought to enhance the defendant's sentence based on prior convictions. The Court held:

*Boykin* involved direct review of a conviction allegedly based upon an uninformed guilty plea. [Parke] never appealed his earlier convictions. They became final years ago, and he now seeks to revisit the question of their validity in a separate recidivism proceeding. To import *Boykin's* presumption of invalidity into this very different context would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the "presumption of regularity" that attaches to final judgments, even when the question is waiver of constitutional rights.

— U.S. at —, 113 S.Ct. at 523 (citation omitted). The Court then concluded:

On collateral review, we think that it defies logic to presume from the mere unavailability of a transcript (assuming no allegation that the unavailability is due to government misconduct) that the defendant was not advised of his rights. In this situation, *Boykin* does not prohibit a state court from presuming, at least initially, that a final judgment of conviction offered for purposes of sentence enhancement was validly obtained.

*Id.* at — U.S. —, 113 S.Ct. at 524.

It is a reasonable application of *Parke* to find that a presumption of regularity attaches to Gilbert's prior state convictions, once the government has submitted certified copies of those convictions to the sentencing court. The initial burden is on the government to demonstrate that the defendant was previously convicted of a violent felony. Once the government submits a certified copy of the defendant's prior conviction into evidence or otherwise demonstrates that the defendant has a prior conviction, the burden shifts to the defendant to rebut the presumption of regularity which attaches to that prior conviction.

Gilbert attempts to distinguish *Parke* from the current dispute in that *Parke* involved the Supreme Court's review of a state sentencing enhancement scheme applied by a state court, whereas the present dispute involves a federal sentencing statute applied by a federal court. However, for purposes of allocating the burden of proof in a sentencing

proceeding, this distinction does not make a difference. As the Supreme Court noted in *Parke,* several federal courts of appeal have placed on the defendant, in the context of a collateral attack, "the entire burden of proving the invalidity of a prior conviction based on a guilty plea." —— U.S. at ——, 113 S.Ct. at 525 (citing *United States v. Gallman,* 907 F.2d 639, 643–45 (7th Cir.1990), *cert. denied,* 499 U.S. 908, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991); *United States v. Paleo,* 967 F.2d 7, 13 (1st Cir.1992); *United States v. Day,* 949 F.2d 973, 982–83 (8th Cir.1991); *United States v. Ruo,* 943 F.2d 1274, 1276 (11th Cir.1991)).

The Supreme Court made clear that it views the direct attack in *Boykin* as very different from the collateral attack in *Parke.* Because the current dispute involves a collateral attack, a presumption of regularity should attach to the five prior convictions at issue. If in the face of such a presumption of regularity the district court should find that a defendant has met his burden of proof in overcoming the presumption, the government may then choose to submit further evidence to establish that a plea was constitutionally valid. However, the burden will remain on the defendant to prove the invalidity of the prior plea.[13]

## B. Was That Burden Met

There is no dispute that certified copies of Gilbert's state convictions were submitted into evidence by the government. Once the government met this initial burden, the burden shifted to Gilbert to rebut the presumption of regularity which attached to those convictions.

Both in the district court and on appeal, Gilbert asserted that he overcame the presumption of regularity with evidence that his guilty pleas were not voluntary and knowing. In support, the defendant contended that the following considerations, *inter alia,* should weigh in his favor: (1) the forms that Gilbert signed waiving his right to indictment by

grand jury indicated that he was not advised of his rights "in open court"; (2) the part of the form in which Gilbert acknowledged that he was informed of his rights had to do with a waiver of indictment by the grand jury and not the rights which are waived when a defendant pleads guilty; (3) there is no transcript providing a record of any guilty plea hearing on March 12, 1972, or sentencing hearing on May 8, 1972; and (4) the testimony by Frawley that suggested that Gilbert's convictions fit the profile of those cases in which no plea colloquies were accorded to defendants.

Unfortunately, there is little in the record to indicate what the district court thought of these arguments. The only indications of the court's opinion are the brief conclusory statements made by the court at the sentencing proceeding and in the sentencing report. During sentencing, the court held that it "will sustain the objections of the defense," and later, in its sentencing report, the court found that the prior convictions were "constitutionally invalid." We can infer from these statements that the court gave significant weight to Gilbert's evidence and assertions. However, the court did not express its understanding of who had the burden of proof. And it is the role of the district court to weigh the evidence in light of the appropriate burden, considering its ability to evaluate the demeanor and credibility of the witnesses and the evidence before it. But without more specific findings by the district court, it is difficult, if not impossible, for this Court to evaluate whether the district court abused its discretion in deciding that the sentencing enhancement should not apply. We cannot determine whether the district court weighed the facts in light of the proper standard of proof; nor can we rule out that the possibility that the apparent discrepancy between Gilbert's offense and the mandatory minimum 15–year sentence may have played an inappropriate role in the district court's decision.

---

**13.** Gilbert also attempts to distinguish *Parke* with the argument that not only was the transcript of Gilbert's state sentencing hearing merely unavailable but that, based on Frawley's testimony, there was no plea colloquy whatsoever. This argument, however, does not fit within our discussion of which party bears the burden of proof. Rather, it is appropriate for consideration during the next step in the process: Did Gilbert meet his burden of proof.

In deciding whether Gilbert has met his burden of proof, the district court must consider our statement in *Stewart* that "the failure [of the state court] to specifically articulate the *Boykin* rights does not carry the day for the defendant if the circumstances otherwise establish the plea was constitutionally acceptable." 977 F.2d at 85. In *Stewart*, we held that, although there was not a specific waiver of the defendant's right to confront his accusers and the right against self-incrimination, a plea colloquy did take place in which the defendant acknowledged his understanding of the charges against him and his right to a jury trial and in which he admitted the charges against him. In rejecting Stewart's collateral attack, we found it significant that the defendant had a recent experience with the criminal justice system during which he had been clearly and fully informed of all of his rights. In addition, we found it significant that Stewart did not contest at his state hearing any of the evidence that he actually committed the crime and, in fact, that he admitted participation in the crime. Under a totality of the circumstances test, we held that the prior state conviction .was constitutionally valid despite the fact that the court did not comply with the requirements of *Boykin;* thus, the conviction could be used to enhance Stewart's sentence.

There are, of course, distinctions between Gilbert and Stewart. There is no evidence that Gilbert had any prior experience in the criminal justice system prior to 1972 convictions. Also, there is no record in the present dispute that the judge personally advised Gilbert of any of his rights. Whether these distinctions, and possibly others, are significant is, in the first instance, a question for the district court to decide.

In *Stewart*, we left open the question of whether district courts could rely on a court's practice and custom in determining that a plea was voluntary and knowing under *Boykin.* Several courts of appeal have held that, in the absence of a transcript of the defendant's guilty plea hearing, it is proper for a court to consider the law, custom, and practice of the state court which accepted the defendant's guilty plea. *See United States v. Dickerson*, 901 F.2d 579, 583 (7th Cir.1990)

("an untranscribed court proceeding does not, in and of itself, require a holding that a guilty plea was infirm. Instead, we investigate the custom, practice, and the law applicable to [state] guilty pleas and if possible the particular court's practice to determine whether the plea was an intelligent and voluntary waiver of the [defendant's] rights."); *United States v. Goodheim*, 686 F.2d 776 (9th Cir.1982) (district court, reviewing collateral attack on constitutionality of a prior conviction, could rely on testimony of the prosecutor and defense counsel who served at the defendant's initial state trial that the state court customarily informed the defendant of his rights and that plea colloquies were held, despite the fact that neither remembered the specifics of this defendant's particular case; such evidence is insufficient to carry the government's initial burden of proof unless it is clear and convincing).

■ In each of these cases, the courts of appeals considered the testimony regarding the practice and custom of the state court to support the government's assertion that the prior conviction was valid. Gilbert has not pointed to one instance in which such practice and custom testimony was used to persuade a court to the contrary. However, Gilbert asserts that, if such custom testimony is to be used here, we should conclude on the basis of the present record that the state court failed to comply with the applicable constitutional requirements. We would note, however, for the benefit of the district court in its considerations on remand that only if the practice and custom testimony is clear and convincing should the district court find that it is sufficient to rebut the presumption of regularity which attaches to final judgments. We impose the clear and convincing standard on the burden of persuasion required with the use of practice and custom testimony, first, because federal sentencing proceedings should not be the preferred forum for reviewing prior state convictions, *see Custis*, 988 F.2d at 1361; and, second, because a defendant's failure to have made an earlier challenge to the conviction may demonstrate "a recognized lack of basis for doing so . . . ." *United States v. Jones*, 977 F.2d 105, 109 (4th Cir.1992); *cert. denied*, — U.S. ——, 113 S.Ct. 1335, 122 L.Ed.2d 719 (1993).

Our review of the Pennsylvania law applicable to the acceptance of guilty pleas at the time of Gilbert's 1972 convictions indicates that the Pennsylvania courts required some type of on-the-record examination to determine whether a defendant's plea was voluntary and knowing. Two years before Gilbert's convictions, in *United States Ex Rel. Wiggins v. Pennsylvania*, 430 F.2d 650 (3d Cir.1970), we considered a habeas corpus petition by a state prisoner who claimed that his guilty plea should be set aside because, under *Boykin*, there was no affirmative showing on the record that the plea was made knowingly and voluntarily. In reviewing the claim, this Court noted:

> *Boykin* ... applied to state criminal proceedings the same standard for on-the-record establishment of the defendant's knowledge of the nature of the charge and the consequences of a guilty plea as was applied to the federal courts in *McCarthy v. United States*.

*Wiggins*, 430 F.2d at 651.

In *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Supreme Court held that the federal rule governing pleas expressly required that a federal judge address the defendant personally to insure that the defendant's plea was voluntary and knowing.[14] Given the Supreme Court's decision in *Boykin* which required some on-the-record, affirmative showing that the defendant's guilty plea was voluntary and intelligent and this Court's decision in *Wiggins* which noted that the standard articulated by the Supreme Court in *McCarthy* applied to the Pennsylvania state courts, the Pennsylvania courts were aware in 1972 of the requirement that they address a defendant personally to insure that his plea was voluntary and knowing. In addition, even before *Boykin*, the Pennsylvania Supreme Court in *Commonwealth ex rel. West v. Rundle*, 428 Pa. 102, 237 A.2d 196 (1968), noted that trial courts should conduct on-the-record examinations to determine whether a defendant's plea was voluntary and knowing.[15]

The only practice and custom evidence before the district court was Frawley's testimony that Gilbert's case fit the profile of those cases in which no plea colloquies were accorded to defendants. This is evidence which the district court must weigh in determining whether Gilbert overcame the presumption of regularity which attached to his state court convictions. Only if such practice and custom evidence is clear and convincing, and not otherwise controverted, would it be sufficient to overcome the presumption of regularity which attaches to Gilbert's prior convictions.

## IV.

■ The district court failed to explain its framework or reasons for finding that Gil-

---

**14.** At the time, Rule 11 of the Federal Rules of Criminal Procedure provided that:

> A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea.... The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

**15.** Shortly after the Pennsylvania Supreme Court's decision in *Commonwealth ex rel. West v. Rundle*, Pennsylvania Rule of Criminal Procedure 319(a) was amended to require an on-the-record examination. *See Commonwealth v. Brown*, 443 Pa. 21, 275 A.2d 332 (1971). Rule 319(a) provided in pertinent part that:

> Pleas shall be taken in open court. A defendant may plead not guilty, guilty, or, with the consent of the court, *nolo contendere*. The

judge may refuse to accept a plea of guilty, and shall not accept it unless he determines after inquiry of the defendant that the plea is voluntary and understandably tendered. Such inquiry shall appear on the record.

In evaluating the circumstances surrounding Gilbert's plea forms, the district court should consider *Commonwealth v. Phillips*, 208 Pa.Super. 121, 220 A.2d 345 (1966), *aff'd*, 424 Pa. 641, 226 A.2d 863 (1967), *cert. denied*, 387 U.S. 946, 87 S.Ct. 2084, 18 L.Ed.2d 1336 (1967) (distinguishing for purposes of the right to counsel, the right to indictment by grand jury from the rights which are waived when a defendant pleads guilty). In addition, the district court should consider Article I, section 10, of the Pennsylvania Constitution providing that no person shall be proceeded against for any indictable offense except by indictment, and Pennsylvania Rule of Criminal Procedure 215 providing a procedure by which defendants can waive this Constitutional right.

bert's prior convictions were constitutionally invalid. Without such findings, we can not properly review the court's decision. Accordingly, we will vacate the sentence imposed by the district court and remand this case for further proceedings consistent with this opinion.