[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10913

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ROBERTO ARROYO-GARCIA,
a.k.a. Jonathan Valenzuela-Rodriguez,
a.k.a. Santiago Arroyo-Prieto,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:17-cr-00337-TWT-RGV-3

_____

Before JORDAN, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Roberto Arroyo-Garcia appeals his 264-month prison sentence after pleading guilty to conspiring to manufacture and possess with intent to distribute methamphetamine, manufacturing and possessing with intent to distribute methamphetamine within 1,000 feet of a school, and manufacturing and possessing with intent to distribute methamphetamine on premises where a minor resides. We affirm Arroyo-Garcia's sentence but remand for the correction of clerical errors in the judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2017, a confidential informant told federal law enforcement about a man with a blue Jeep who was selling methamphetamine in Atlanta, Georgia. Federal agents from the Department of Homeland Security tracked the Jeep down and, after obtaining a warrant, installed a tracking device on it. This tracking device led the agents to a house in Norcross, Georgia.

On August 28, 2017, a state trooper assisting with the investigation pulled the blue Jeep over for a traffic infraction. The trooper found $10,000 in bundled cash and a Taurus 9mm pistol inside the car. Zury Brito-Arroyo, the driver, told the police that the money and the gun were his.

Meanwhile, federal agents went to the house in Norcross and were greeted at the door by Brito-Arroyo's mother, who gave

them permission to search the house. The agents entered a shed in the backyard and discovered Arroyo-Garcia, Bonifacio Brito-Maldonado, and "a methamphetamine conversion lab." Inside the drug lab, the agents found gallons of liquid methamphetamine, several kilograms of crystal methamphetamine, and drug ledgers. The agents took Arroyo-Garcia and Brito-Maldonado into custody. Brito-Maldonado immediately complied but Arroyo-Garcia initially resisted. Arroyo-Garcia had $6,384 on him and Brito-Maldonado had $1,280 in his wallet.

There was a strong chemical odor inside the shed and Arroyo-Garcia vomited after he was taken outside. Arroyo-Garcia asked a state trooper for water and, after the trooper went to get some, Arroyo-Garcia jumped up, scaled a fence, and fled into a nearby forest. After a twenty-minute search, Arroyo-Garcia was found hiding in the woods. A state trooper tore a ligament in his knee pursuing Arroyo-Garcia.

The agents then returned to the house and searched it. Brito-Maldonado lived in the house and the agents found a Beretta 9mm pistol, $8,500 in cash, and some methamphetamine inside his bedroom. A ten-year-old child also lived in the house. There was no evidence that Arroyo-Garcia lived there. The agents then searched Brito-Arroyo's apartment in Sandy Springs, Georgia. Inside they found $41,000 in bundled cash, a pistol, ammunition, and items related to the distribution of drugs.

A grand jury returned an indictment against Arroyo-Garcia and his two codefendants (Brito-Arroyo and Brito-Maldonado).

Arroyo-Garcia was charged with five crimes: (1) conspiring to manufacture and possess with intent to distribute methamphetamine; (2) manufacturing and possessing with intent to distribute methamphetamine within 1,000 feet of an elementary school; (3) maintaining a residence to manufacture and possess with intent to distribute methamphetamine; (4) manufacturing and possessing with intent to distribute methamphetamine on premises where a minor resides; and (5) residing in the United States without approval after a previous deportation.

Arroyo-Garcia pleaded guilty to conspiring to manufacture and possess with intent to distribute methamphetamine, manufacturing and possessing with intent to distribute methamphetamine within 1,000 feet of an elementary school, and manufacturing and possessing with intent to distribute methamphetamine on premises where a minor resides. The other counts against him were dismissed.

The presentence investigation report calculated Arroyo-Garcia's base offense level at 38 under guideline section 2D1.1 because the offense involved at least 8.5 kilograms of methamphetamine, then added three levels under section 2D1.1(b)(14)(C)(i) because a minor lived on the premises where Arroyo-Garcia possessed the methamphetamine, and finally subtracted three levels under section 3E1.1 because Arroyo-Garcia had accepted responsibility. This resulted in a total offense level of 38. The presentence investigation report then determined that Arroyo-Garcia's criminal history score was nine and his category was IV because of three

prior convictions, including a 2003 conviction that had been tolled and ended in a 2012 probation revocation.  With the three prior convictions, the advisory guideline range was 324 to 405 months in prison.

The government objected to the absence in the presentence investigation report of a two-level firearm enhancement under section 2D1.1(b)(2).  The government argued that the enhancement applied here because:  (1) a coconspirator possessed the firearm; (2) the possession was in furtherance of the conspiracy; (3) Arroyo-Garcia was a member of the conspiracy at the time of the possession; and (4) the coconspirator's possession of the firearm was reasonably foreseeable to Arroyo-Garcia.

Arroyo-Garcia had three objections to the presentence investigation report.  First, he objected to the government's proposal for a two-level firearm enhancement, arguing that his coconspirators' possession of a firearm was not foreseeable to him given his limited role in the conspiracy.  Second, he objected to the absence of a two-level minor role reduction, arguing that he did not live at the house where the drugs "were being cooked," did not have a managerial role in the conspiracy, and did not receive an equal or greater share of the proceeds of the conspiracy relative to his coconspirators.  And third, he objected to the inclusion of the 2003 conviction in his criminal history, arguing that it was too remote and erroneously tolled after his deportation.

At sentencing, the district court explained that it had carefully reviewed the presentence investigation report and adopted

the unobjected to facts in the report as the court's findings. The district court then addressed the objections to the calculation of the sentencing guidelines and Arroyo-Garcia's criminal history.

As to the firearm enhancement, the district court ruled that it applied for four reasons. First, the guns in this case were possessed by Arroyo-Garcia's coconspirators. Second, the guns were possessed in furtherance of the conspiracy, given their proximity to the drugs and "drug proceeds." Third, the coconspirators' possession of the guns was reasonably foreseeable to Arroyo-Garcia. And fourth, Arroyo-Garcia "ha[d] not shown that the possession of the firearm" by a coconspirator "was clearly improbable."

As to the absence of a minor role reduction, the district court overruled Arroyo-Garcia's objection because he had failed to meet "his burden of showing that he was a minor participant." The district court found that Arroyo-Garcia was involved in the processing of the methamphetamine, which was an important role in the conspiracy, and had over six thousand dollars on him when he was arrested, which indicated that he was profiting from the conspiracy.

As to Arroyo-Garcia's criminal history, the district court concluded that the three points for his 2003 conviction were properly assessed, given the 2012 probation revocation. The district court concluded that it was irrelevant whether the probation tolling order was properly issued; what mattered, the district court said, was that there was a probation revocation within fifteen years as required by sections 4A1.1(a) and 4A1.2(k).

With the addition of the two-level firearm enhancement, Arroyo-Garcia had a total offense level of 40 and a guideline range of 360 months to life in prison. Arroyo-Garcia requested a below-guideline sentence of 132 months. He argued that a downward variance was appropriate because the sentencing guidelines for methamphetamine lacked "empirical justification," and because he played a limited role in the conspiracy. Arroyo-Garcia maintained that his sentence should not be significantly higher than his more culpable codefendants, who received sentences of 228 months and 252 months.

The government requested a below-guideline sentence of 264 months. The government acknowledged that this was higher than Arroyo-Garcia's codefendants' sentences but pointed out that Arroyo-Garcia had a significant criminal history and resisted arrest, while his codefendants had no prior criminal history and cooperated with law enforcement.

The district court sentenced Arroyo-Garcia to 264 months in prison followed by ten years of supervised release. The district court said that, in fashioning the sentence, it had considered the statutory factors in 18 U.S.C. section 3553(a), including "the nature and circumstances of the offense, the history and characteristics of [Arroyo-Garcia], the need for the sentence imposed to reflect the seriousness of the offense, to afford adequate deterrence, to protect the public and promote respect for the law, and the need to avoid unwarranted sentencing disparities." Although the district court believed that a guideline sentence would have been appropriate, it

said that "in light of the downward variance that [it] gave" to code-fendant Brito-Arroyo, "a similar downward variance [was] appropriate here."  Arroyo-Garcia's sentence was twelve months higher than the 252-month sentence Brito-Arroyo received, the district court explained, because of the "aggravating factors" in Arroyo-Garcia's case—namely, his criminal history and his flight from law enforcement.

Arroyo-Garcia appeals the district court's sentence.

### STANDARD OF REVIEW

We review the district court's findings of fact on the firearm enhancement for clear error, and the application of the sentencing guidelines to those facts de novo.  *United States v. Gallo*, 195 F.3d 1278, 1280 (11th Cir. 1999).  We review a district court's denial of a role reduction for clear error.  *United States v. Bernal–Benitez*, 594 F.3d 1303, 1320 (11th Cir. 2010).  We review de novo the district court's criminal history score calculation. *United States v. Baptiste*, 876 F.3d 1057, 1061 (11th Cir. 2017).

We review de novo a claim that a district court did not adequately explain its findings under 18 U.S.C. section 3553(c)(2). *United States v. Parks*, 823 F.3d 990, 996 (11th Cir. 2016).  And we assess the substantive reasonableness of a sentence under an abuse of discretion standard.  *Gall v. United States*, 552 U.S. 38, 51 (2007).

## DISCUSSION

Arroyo-Garcia argues that the district court erred at sentencing by applying the firearm enhancement, denying his request for a minor role reduction, and including the 2012 probation revocation when calculating his criminal history.  He also argues that his sentence was insufficiently explained and substantively unreasonable.  We address each of Arroyo-Garcia's claims below.

### Firearm Enhancement

Arroyo-Garcia argues that the district court erred by imposing a two-level firearm enhancement without making any findings as to the scope of the conspiracy activity he agreed to jointly undertake.  Arroyo-Garcia maintains that the government failed to prove that the firearm possession by his coconspirators was foreseeable to him.  And he argues that the district court erred by placing the burden on him to show that the possession of the firearms by his coconspirators was clearly improbable.  We disagree.

A two-level enhancement applies where a defendant possesses a firearm during the manufacture, import, export, or trafficking of illegal drugs.  U.S.S.G. § 2D1.1(b)(1).  "The government bears the initial burden of showing, by a preponderance of the evidence, that a firearm was 'present' at the site of the charged conduct or that the defendant possessed it during conduct associated with the offense of conviction."  *United States v. George*, 872 F.3d 1197, 1204 (11th Cir. 2017).  "To meet its burden, the government must show that the firearm had some purpose or effect with

respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Id.* (citation and quotation marks omitted). "If the government meets this initial burden, the burden then shifts to the defendant, who must establish that a connection between the weapon and the offense was 'clearly improbable.'" *Id.* (citation omitted).

Although Arroyo-Garcia did not personally possess a firearm, the firearm enhancement "may be applied when the firearm is possessed by" a coconspirator. *United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006). The firearm enhancement applies to a coconspirator "when the government establishes by a preponderance of the evidence" that (1) "the possessor of the firearm was" a coconspirator, (2) "the possession was in furtherance of the conspiracy," (3) "the defendant was a member of the conspiracy at the time of possession," and (4) the coconspirator possession "was reasonably foreseeable by the defendant." *Id.* (citation and quotation marks omitted).

Arroyo-Garcia argues that the district court reversibly erred in applying the firearm enhancement because it failed to make preliminary findings about the scope of his agreed-upon undertaking in the conspiracy. "[T]o determine a defendant's liability for the acts of others, the district court must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant." *United States v. Abovyan*, 988 F.3d 1288, 1312 (11th Cir. 2021) (citation and quotation marks omitted). "The district court may determine reasonable foreseeability only after it

makes those individualized findings." *Id.* But we "will not vacate a defendant's sentence based on the district court's failure to make specific findings if the record otherwise supports the court's determination." *Id.* (cleaned up).

Here, the record supports a determination that Arroyo-Garcia was accountable for the firearms possessed by his coconspirators. There is no dispute that his coconspirators possessed firearms, nor is there any dispute that Arroyo-Garcia was a member of the conspiracy at the time of the possession. That just leaves the second and fourth factors.

As to whether the possession of the firearms was in furtherance of the drug conspiracy, "proximity between guns and drugs, without more, is sufficient to meet the government's initial burden under [section] 2D1.1(b)(1)." *United States v. Carillo-Ayala*, 713 F.3d 82, 91 (11th Cir. 2013); *see also, e.g., United States v. Hall*, 46 F.3d 62, 63–64 (11th Cir. 1995) (affirming application of the firearm enhancement where a handgun was found in a dresser drawer in the same bedroom with scales, a ziplock bag containing cocaine residue, and a purse containing $12,000 in cash).

In this case, while Arroyo-Garcia was inside the drug lab, there was a pistol inside the adjacent stash house in his coconspirator's room alongside thousands of dollars in cash and methamphetamine. A pistol was found in Arroyo-Garcia's other coconspirator's car along with $10,000 in bundled cash. And a third pistol was found in the coconspirator's apartment alongside $41,000 in cash and other items related to methamphetamine distribution. Given

the proximity of these pistols to the drugs, cash proceeds from the drug sales, and drug paraphernalia, the record supports a determination that Arroyo-Garcia's coconspirators possessed the firearms in furtherance of the drug conspiracy. *See Carillo-Ayala*, 713 F.3d at 91.

The record also supports the determination that the possession of firearms by Arroyo-Garcia's coconspirators was reasonably foreseeable to him. The question is not actual knowledge but foreseeability; the firearm enhancement applies "even where defendants claim they were unaware of the firearm possession." *Pham*, 463 F.3d at 1246. "[W]e have noted that numerous cases have recognized that guns are a tool of the drug trade. There is a frequent and overpowering connection between the use of firearms and narcotics traffic. To that end, we have found it reasonably foreseeable that a coconspirator would possess a firearm where the conspiracy involved trafficking in lucrative and illegal drugs." *Id.* (citation and quotation marks omitted).

That is the case here. "For the same reasons the evidence permitted a finding that there was a connection between the firearms and the drugs, it permitted a finding that the coconspirators' possession of the weapons was reasonably foreseeable to [Arroyo-Garcia]." *See United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005). This drug conspiracy involved gallons of liquid methamphetamine, kilograms of crystal methamphetamine, and generated tens of thousands of dollars. That Arroyo-Garcia's coconspirators

would use guns—ubiquitous tools of the drug trade—to protect their lucrative contraband and cash was readily foreseeable.

Because the record supports a determination that there was a connection between the firearms and the drugs, and that the co-conspirators' possession was reasonably foreseeable, the government met its initial burden under section 2D1.1(b)(1). *See Pham*, 463 F.3d at 1245–46. The district court therefore did not err in shifting the burden to Arroyo-Garcia to prove that a connection between the weapon and the offense was "clearly improbable," a burden he failed to meet. *See George*, 872 F.3d at 1204. Finding no error, we affirm the district court's application of the firearm enhancement.

### Minor Role Reduction

The sentencing guidelines provide for a two-level decrease to a defendant's offense level if he "was a minor participant in [the] criminal activity." U.S.S.G. § 3B1.2(b). A minor participant is one "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* cmt. n.5. "Even if a defendant played a lesser role than the other participants" in a conspiracy, "that fact does not entitle [him] to a role reduction since it is possible that none are minor or minimal participants." *United States v. Martin*, 803 F.3d 581, 591 (11th Cir. 2015) (citation and quotation marks omitted). "The defendant bears the burden of establishing his minor role in the offense by a preponderance of the evidence." *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016).

We have "long instructed sentencing courts analyzing a claim for a minor-role reduction to consider 'first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct.'" *Id.* (quoting *United States v. De Varon*, 175 F.3d 930, 940 (11th Cir. 1999) (en banc)). The district court should evaluate "the totality of the circumstances and . . . the facts of [each] particular case." U.S.S.G. § 3B1.2 cmt. n.3(C). The sentencing guidelines provide a "non-exhaustive list of factors" for the district court to consider, including "the degree to which the defendant understood the scope and structure of the criminal activity," "the degree to which the defendant participated in planning or organizing the criminal activity," "the degree to which the defendant exercised . . . or influenced the exercise of decision-making authority," the "nature and extent of the defendant's participation," and "the degree to which the defendant stood to benefit." *Id.*

Arroyo-Garcia argues that the government "failed to show that he was anything but a processor" when it came to the methamphetamine in the drug conversion lab. But it was his burden to show that he was a minor participant, not the government's burden to show that he wasn't. *See Cruickshank*, 837 F.3d at 1192. Although Arroyo-Garcia argued before the district court that he was not in charge of anyone in the conspiracy, had no managerial or leadership role, and merely assisted the conspiracy in a limited manner at the direction of others, the district court was not

required to treat these assertions as evidence. *United States v. Rodriguez*, 732 F.3d 1299, 1305 (11th Cir. 2013) ("Absent a stipulation or agreement between the parties, however, an attorney's factual assertions alone do not constitute evidence that a [d]istrict [c]ourt can rely on."). Other than the bald assertions of counsel, Arroyo-Garcia offered no evidence that he just followed orders during the conspiracy.

Instead, the evidence showed that Arroyo-Garcia was not "just" a processor. He was caught red-handed in a "methamphetamine conversion lab" standing near a "large pot and burner" used to manufacture the drugs. There were gallons of liquid methamphetamine and kilograms of crystal methamphetamine inside the drug lab. This evidence showed that the "nature and extent" of Arroyo-Garcia's participation in the criminal activity was substantial. *See* U.S.S.G. § 3B1.2 cmt. n.3(C). As the district court put it, in a conspiracy to manufacture methamphetamine, manufacturing the methamphetamine is "obviously" an "important role in the conspiracy."

The district court also relied on the fact that Arroyo-Garcia had over six thousand dollars on him, which was evidence "that he was one of the people that was profiting from the conspiracy." Proof that Arroyo-Garcia "stood to benefit" and had substantially benefited from the drug conspiracy further supported the district court's finding that he was not a minor participant in the criminal activity. *See id.*

Arroyo-Garcia maintains that he was a minor participant because, unlike his codefendants, he was not caught with a firearm, did not live in or maintain the stash house where the drug lab was found, and did not plead guilty to maintaining a residence to manufacture methamphetamine.  But these facts do not compel the conclusion that he played a minor role in the conspiracy.  Indeed, they are consistent with Arroyo-Garcia having a *superior* role in the criminal hierarchy and trying to distance himself from legal exposure by letting others take the heat for maintaining the drug house and possessing the guns.  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

Finally, Arroyo-Garcia argues that the district court's failure to make findings as to the scope of the conspiracy activity he agreed to jointly undertake requires a remand.  But, for the reasons we have already given, the record is sufficient to support a finding that Arroyo-Garcia's relevant conduct was not minor compared to his codefendants' conduct.  He was not a lowly drug courier recruited "for a single smuggling transaction involving a small amount of drugs." *De Varon*, 175 F.3d at 943 (quoting U.S.S.G. § 3B1.2, cmt. n.2).  If this drug conspiracy was a restaurant, Arroyo-Garcia was the cook in the kitchen preparing the food.  Cooking the food in a busy restaurant is not minor.

In short, we cannot say that the district court clearly erred in evaluating "the totality of the circumstances and . . . the facts of

[this] particular case" and finding that Arroyo-Garcia was not a minor participant in the drug conspiracy. *See United States v. Wenxia Man*, 891 F.3d 1253, 1274 (11th Cir. 2018) (citation omitted). We therefore affirm the district court's denial of a minor role reduction.

### Arroyo-Garcia's Criminal History

Arroyo-Garcia argues that the district court erred by adding three points to his criminal history for the 2012 probation revocation. This was error, he argues, because the tolling order following his 2003 conviction was improper and his probation shouldn't have been tolled. We reject this claim.

Sentences resulting from convictions that "have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant," or that "have been ruled constitutionally invalid in a prior case," are not included when calculating a defendant's criminal history. U.S.S.G. § 4A1.2 cmt. n.6. But the sentencing guidelines "do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law." *Id.*; *see also United States v. Roman*, 989 F. 2d 1117, 1119 (11th Cir. 1993) (explaining that "district courts can only exclude convictions that have already been ruled invalid").

Here, Arroyo-Garcia's criminal history included a state court conviction from 2003 that resulted in a probation revocation in 2012. Arroyo-Garcia does not argue that this conviction has been reversed or vacated because of errors of law or newly

discovered evidence, nor does he argue that this conviction was ruled constitutionally invalid in a prior case. The district court therefore had no basis to disregard this conviction. *See* U.S.S.G. § 4A1.2 cmt. n.6. Arroyo-Garcia's challenge to the validity of the tolling order amounts to a collateral challenge to the 2012 probation revocation. But "[n]othing in [n]ote 6, much less the guidelines themselves, authorizes district courts to question state convictions for other reasons." *Roman*, 989 F.2d at 1119. Thus, the district court did not err in including this prior conviction when calculating Arroyo-Garcia's criminal history. *See id.*

Arroyo-Garcia alternatively argues that, for two reasons, we should remand for additional findings on this issue. First, he argues that we should remand because there is no indication that the district court reviewed his exhibits about the validity of the 2012 probation revocation. But, as we already explained, Arroyo-Garcia had no right to collaterally attack his state conviction and so a remand would be futile. In any event, the record does not support Arroyo-Garcia's argument that the district court ignored the facts relevant to this conviction. The district court explained that it had carefully reviewed the presentence investigation report, which included Arroyo-Garcia's lengthy objection to the inclusion of the 2012 probation revocation in his criminal history; it admitted into evidence the exhibits Arroyo-Garcia offered related to the conviction; and the district court heard extensive arguments from both parties on this issue. Nothing in the record suggests that the district court ignored Arroyo-Garcia's evidence and arguments.

21-10913                Opinion of the Court                    19

Second, Arroyo-Garcia contends for the first time on appeal that because it is unclear whether he had counsel during the 2012 probation revocation hearing, a remand is necessary to determine whether the conviction is presumptively void. But, even reviewing the new argument for plain error, *United States v. Phillips*, 4 F.4th 1171, 1178 (11th Cir. 2021) ("Because [the defendant] never made this argument to the district court, we review only for plain error."), there was no evidence in the record that he was uncounseled during the 2012 probation revocation. Arroyo-Garcia has not established any error—let alone one that is plain.

Finally, Arroyo-Garcia argues that the district court erred by refusing to grant him a downward criminal history departure. But "[w]e may not review at all the district court's discretionary decision not to depart from the guidelines' sentencing range," provided the district court did not erroneously believe it lacked authority to depart. *United States v. Pressley*, 345 F.3d 1205, 1209 (11th Cir. 2003); *see also United States v. Cubero*, 754 F.3d 888, 897–98 (11th Cir. 2014) (finding no abuse of discretion where the "district court was aware that it could vary downward and impose a sentence below the guidelines range" but "declined to do so given the facts of [the] case"). Here, there is no indication that the district court thought it didn't have the discretion to depart. We therefore have no basis to disturb the district court's decision not to adjust its criminal history calculation.

*Procedural Reasonableness*

Arroyo-Garcia argues that his sentence is procedurally unreasonable because the district court "failed to specify the reasons for the sentence beyond a boilerplate recitation of the 18 U.S.C. [section] 3553(a)" sentencing factors and failed to "sufficiently state the basis" for the departure sentence it imposed.

"A sentence may be procedurally unreasonable" where the district court "fails to adequately explain the chosen sentence." *United States v. Gonzalez*, 550 F.3d 1319, 1323 (11th Cir. 2008) (citing *Gall*, 552 U.S. at 50). When a district court imposes a nonguideline sentence, it must "state in open court" the "specific reason for the imposition of" that sentence. 18 U.S.C. § 3553(c)(2). But section 3553(c)(2) doesn't require "a full opinion in every case." *Rita v. United States*, 551 U.S. 338, 356 (2007). "The appropriateness of brevity or length" "depends upon circumstances." *Id.* A district court's stated reasons for a departure are legally sufficient where there is enough explanation to show that it "considered the parties' arguments" and that the basis for its decision was "reasoned." *Id.*

Here, the district court gave a sufficient explanation for the downward variance it imposed on Arroyo-Garcia. The district court carefully reviewed the presentence investigation report and adopted its uncontested facts as the findings of the court. The district court heard extensive argument from the parties about the section 3553(a) sentencing factors and stated that it had considered each of these statutory factors in fashioning Arroyo-Garica's sentence.    And the district court said that although a guidelines

sentence would have been appropriate in this case, it gave Arroyo-Garcia a downward variance "in light of the downward variance" it gave to Arroyo-Garcia's codefendants. On this record, we are satisfied that the district court "considered the parties' arguments" and had a "reasoned" basis for its "decisionmaking." *See id.* We therefore reject Arroyo-Garcia's claim that his sentence was insufficiently explained.

## Substantive Reasonableness

Arroyo-Garcia finally argues that his sentence was substantively unreasonable because he received a higher sentence than his two codefendants "despite all indications that [they] were vastly more culpable" than he was. He maintains that the district court failed to consider his arguments about his diminished culpability relative to his coconspirators. Arroyo-Garcia also points out that his codefendants, unlike him, lived at or maintained the stash house, possessed firearms and contraband, and had more money from the conspiracy than he did.

In evaluating a sentence's reasonableness, we consider "the totality of the circumstances." *Gonzalez*, 550 F.3d at 1324. "A district court abuses its considerable discretion and imposes a substantively unreasonable sentence only when it '(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors.'" *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th

Cir. 2015) (quoting *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc)).

Arroyo-Garcia's 264-month sentence was not substantively unreasonable. First, the district court imposed a nonguideline sentence significantly below the guideline range of 360 months to life in prison. We generally expect sentences within the guideline range to be reasonable. *See United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014) ("[W]hen the district court imposes a sentence within the advisory [g]uidelines range, we ordinarily will expect that choice to be a reasonable one." (internal quotation marks omitted)). Because we expect a sentence imposed within the guideline range to be reasonable, one would not typically expect a sentence well *below* that range to be an unreasonably high sentence.

Second, the sentence is well below the statutory maximum of life in prison, which also indicates that the sentence is a reasonable one. *Id.* ("A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence.").

Third, Arroyo-Garcia's criminal history supported the sentence. *See Rosales-Bruno*, 789 F.3d at 1261 ("District courts have broad leeway in deciding how much weight to give to prior crimes the defendant has committed."); *see also* 18 U.S.C. § 3553(a)(1) ("The court, in determining the particular sentence to be imposed, shall consider the . . . history . . . of the defendant . . . ."). This was the fourth time he had been convicted of a felony, having been convicted of possessing and delivering amphetamine in 2003,

possession of cocaine in 2012, and illegal reentry after deportation in 2014. Two of these prior convictions involved drugs and Arroyo-Garcia's counsel conceded that this was a "significant" criminal history.

And fourth, Arroyo-Garcia's sentence is reasonable considering his relevant conduct during the offense. *See id.* (requiring the sentencing court to also consider "the nature and circumstances of the offense"). Arroyo-Garcia was caught in a methamphetamine conversion lab surrounded by drugs—gallons of liquid methamphetamine and several kilograms of crystal methamphetamine. This lab was behind a house where a minor lived and within 200 feet of an elementary school. Arroyo-Garcia's coconspirators possessed multiple firearms. And Arroyo-Garcia resisted arrest and fled from law enforcement—unlike his coconspirators who cooperated without incident.

As to Arroyo-Garcia's claim that the district court failed to consider his lesser role in the criminal activity compared to his coconspirators, a district court's decision not to discuss specific mitigating evidence does not mean that the court failed to consider that evidence. *See United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007) ("[A]lthough the district court's sentencing order made no mention of evidence that arguably mitigated in Amedeo's favor under § 3553(a), we cannot say that the court's failure to discuss this 'mitigating' evidence means that the court erroneously 'ignored' or failed to consider this evidence in determining [the defendant's] sentence."). Nothing required the district court, in

considering the section 3553(a) factors, to state on the record whether it had compared Arroyo-Garcia's involvement in the criminal activity to his coconspirators'. *See id.* In any event, the district court did compare Arroyo-Garcia's criminal behavior to his coconspirators'. The district court explained that Arroyo-Garcia's sentence was twelve months higher than codefendant Brito-Arroyo's sentence because of Arroyo-Garcia's "criminal history and his attempted flight" from law enforcement.

Although Arroyo-Garcia argues that his sentence is substantively unreasonable because he received higher sentences than his codefendants who, he maintains, were "vastly" more culpable, "[d]isparity between the sentences imposed on codefendants is generally not an appropriate basis for relief on appeal." *United States v. Cavallo*, 790 F.3d 1202, 1237 (11th Cir. 2015) (citation and quotation marks omitted). "When we consider disparity in sentencing, we first ask whether the defendant is similarly situated to the defendants to whom he compares himself." *United States v. Duperval*, 777 F.3d 1324, 1338 (11th Cir. 2015). Defendants with different criminal histories are not similarly situated. *See United States v. Jayyousi*, 657 F.3d 1085, 1118 (11th Cir. 2011). Because Arroyo-Garcia had a "significant" criminal history and his coconspirators did not, and because Arroyo-Garcia resisted arrest and his coconspirators did not, the lower sentences his coconspirators received did not render his sentence unreasonably high.

*Clerical Errors*

Although we affirm Arroyo-Garcia's sentence, there are clerical errors in his judgment. We can fix clerical errors in the judgment, and we can remand with instructions to correct those errors. *See United States v. Massey*, 443 F.3d 814, 822 (11th Cir. 2006). Count one in the judgment provides that Arroyo-Garcia was convicted of conspiring to possess methamphetamine with intent to distribute, and count two provides that he was convicted for conspiracy to manufacture and possess methamphetamine with intent to distribute near a school. However, count one of the indictment charged Arroyo-Garcia with conspiring to possess methamphetamine with intent to distribute and manufacture, and count two charged him with manufacturing and possessing methamphetamine with intent to manufacture and distribute near a school. We remand to the district court with instructions to amend the judgment to correct these clerical errors.

## CONCLUSION

We affirm Arroyo-Garcia's sentence in all respects. We remand for the correction of the clerical errors in the judgment.

AFFIRMED; REMANDED TO CORRECT CLERICAL ERRORS IN THE JUDGMENT.